MERRICK B. GARLAND
Attorney General
RANDY S. GROSSMAN
United States Attorney
MICHAEL G. WHEAT, CBN 118598
JOSEPH J.M. ORABONA, CBN 223317
JANAKI G. CHOPRA, CBN 272246
COLIN M. MCDONALD, CBN 286561
ANDREW Y. CHIANG, NYBN 4765012
Special Attorneys of the United States
880 Front Street, Room 6293
San Diego, CA 92101
619-546-8437/7951/8817/9144/8756
Michael.Wheat@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | CR No. 22-00048-JMS-WRP |
|---|---|
| Plaintiff, | UNITED STATES' RESPONSE IN OPPOSITION TO SHERI TANAKA'S MOTION TO DISMISS COUNT 1 BASED ON *BENJAMIN* [ECF No. 205] |
| v. | |
| KEITH MITSUYOSHI KANESHIRO (1), DENNIS KUNIYUKI MITSUNAGA (2), TERRI ANN OTANI (3), AARON SHUNICHI FUJII (4), CHAD MICHAEL MCDONALD (5), SHERI JEAN TANAKA (6), | |
| Defendants. | |

I

INTRODUCTION

Sheri Tanaka's latest attempt to throw out the charges proves the third try is not always a charm. On this go-round, Tanaka encourages the Court to adopt a

pretrial ruling from the Southern District of New York that: (1) is unpublished and erroneous; (2) has been appealed by the United States to the Second Circuit; and (3) mistakenly applied a *quid pro quo* standard that has been emphatically rejected by every circuit to have considered the issue—including the Ninth Circuit. The Court should deny Tanaka's third motion to dismiss with equal emphasis.

II

BACKGROUND

Before the Court is a motion to dismiss that rises and falls on another district court's unpublished decision in *United States v. Benjamin*, No. 21CR706, 2022 WL 17417038 (S.D.N.Y. December 5, 2022). It decidedly falls.

The district court in *Benjamin* dismissed an indictment that charged a public official with crimes similar to those charged here. But the trial judge in that case believed he was "bound" by language from two Second Circuit cases that marked a different path from every circuit to have confronted the *quid pro quo* requirement. *Benjamin*, 2022 WL 17417038 at *15. Those cases—despite not involving campaign contributions at all—stated in dicta that when a public official is charged with campaign contribution bribery, the Supreme Court's requirement of an "explicit" *quid pro quo* actually means an agreement that was "unambiguously expressed by the parties"—that is, it must be "shown by something more than mere implication[.]" *Id.* at *4, *8, and *12–*13. Because the indictment in *Benjamin* did not allege such an "express" agreement between the donor and the official, the judge dismissed the

2

indictment for failing to state an essential element of the offense. *Id.* at *14 ("the existence of an exchange or agreement does not necessarily imply the existence of an explicit or express agreement"). While the judge acknowledged that the existence of a *quid pro quo* between the donor and the official could be "inferred from" the allegations of the indictment, any "implied" agreement did not satisfy what the judge believed was "the governing legal standard here." *Id.* at *16. Accordingly, the court also dismissed the indictment for failing to allege a crime. *Id.* at *15.

Detecting the serious errors in the New York district court's ruling—including but not limited to the court's reliance on unsupportable dicta as well as its dismissal of the case before the evidence could be evaluated by a jury—the Solicitor General authorized an appeal to the Second Circuit. That appeal has been briefed. The Second Circuit heard arguments in May.[1] A decision is forthcoming.

But no matter what the Second Circuit decides, its opinion will have no bearing on the sufficiency of the First Superseding Indictment (FSI) here. The FSI alleges a clear and unambiguous *quid pro quo*—campaign contributions (*quid*) in exchange for a revenge prosecution (*quo*). FSI ¶ 21(3). In the Ninth Circuit, an "explicit" *quid pro quo* means an agreement with terms that are clear and unambiguous, not one that is "express." That means the trial judge in *Benjamin*, had

---

[1] Available at: https://www.ca2.uscourts.gov/decisions (type in "22-3091" for audio recording of oral argument).

he sat on this Court, would have had no grounds to dismiss the indictment. This is fatal to Tanaka's motion and disposes of all the issues before this Court.

III

DISCUSSION

The motion to dismiss fails for three reasons. First, the dismissal of the indictment in *Benjamin* was predicated on an outlier interpretation of the Supreme Court's "explicit" *quid pro quo* requirement—one that does not exist in the Ninth Circuit or in any other circuit besides in Second Circuit dicta. That alone justifies denying this motion. Second, the FSI does not fail to allege an essential element. It properly alleges an explicit *quid pro quo*—bribes for a prosecution. There is no element requiring an agreement that "precedes and controls the official act," as Tanaka insists (repeatedly) in her motion. Mot. at 1, 5–6, 9–10, 13–14 (ECF No. 205). Such an element would make no sense. Substantive bribery crimes—no less a *conspiracy* to commit them—do not require an official act to ever have been committed. Third, to the extent Tanaka contends the United States has not presented sufficient factual detail to support an explicit *quid pro quo* agreement—that is a question for the jury to resolve, not for this Court to determine on the pleadings.

A. *BENJAMIN*'S INTERPRETATION OF "EXPLICIT" *QUID PRO QUO* HAS BEEN REJECTED BY THE NINTH CIRCUIT

Any analysis of *Benjamin* must start with *McCormick*. In that case, the Supreme Court reversed the Fourth Circuit's holding "that a *quid pro quo* is not necessary for conviction under the Hobbs Act when an official receives a campaign

4

contribution." *United States v. McCormick*, 500 U.S. 257, 274 (1991). Because elections have been financed by private contributions since "the beginning of the Nation," the Supreme Court observed that public officials do not commit federal crimes simply when "they act for the benefit of constituents . . . shortly before or after campaign contributions are solicited and received from those beneficiaries[.]" *Id.* at 272. Rather, the receipt of campaign contributions is criminal under the Hobbs Act "only if the payments are made in return for an *explicit* promise or undertaking by the official to perform or not perform an official act. In such situations the official asserts that his official conduct will be controlled by the terms of the promise or undertaking." *Id* (emphasis added). The Supreme Court believed this formulation would "define[] the forbidden zone of conduct with sufficient clarity." *Id.* at 273.

Shortly after *McCormick* was decided, the Ninth Circuit addressed the explicitness requirement in another campaign contribution bribery case charged under the Hobbs Act. In *United States v. Carpenter*, 961 F.2d 824, 827 (9th Cir. 1992), the Ninth Circuit rejected the argument that *McCormick*'s "explicitness requirement cannot be met unless an official has specifically stated that he will exchange official action for a contribution." The Ninth Circuit believed that "[t]o read *McCormick* as imposing such a requirement would allow officials to escape liability under the Hobbs Act with winks and nods, even when the evidence as a whole proves that there has been a meeting of the minds to exchange official action for money." *Id.* Accordingly, "what *McCormick* requires is that the quid pro quo be

5

clear and ambiguous, leaving no uncertainty about the terms of the bargain." *Id.* But, the agreement "need not be verbally explicit." *Id.* Instead, a jury "may consider both direct and circumstantial evidence, including the context in which a conversation took place, to determine if there was a meeting of the minds on a quid pro quo." *Id.*

One month after *Carpenter*, in *United States v. Evans*, 504 U.S. 255 (1992), the Supreme Court confirmed that the Ninth Circuit's interpretation of "explicit" was correct. At issue in *Evans* was a jury instruction stating, "if a public official demands or accepts money in exchange for a specific requested exercise of his or her official power, such a demand or acceptance does constitute a violation of the Hobbs Act regardless of whether the payment is made in the form of a campaign contribution." *Id.* at 258. The Supreme Court approved this instruction, concluding that it "satisfies the *quid pro quo* requirement of *McCormick* . . . because the offense is completed at the time when the public official receives a payment in return for his agreement to perform specific official acts[.]" *Id.* at 268. *Evans* made clear that the *quid pro quo* agreement need not be express: "We hold today that the Government need only show that a public official has obtained a payment to which he was not entitled, knowing that the payment was made in return for official acts."[2] *Id.*

---

[2] As mentioned, *McCormick*, *Evans*, and *Carpenter*, all dealt with campaign contribution bribery under the Hobbs Act, 18 U.S.C. § 1951. This prosecution does not allege violations of the Hobbs Act. Without conceding that *McCormick*, *Evans*, and *Carpenter*, govern here, our position is that Count 1 of the FSI would nevertheless meet the standard set forth by those authorities.

6

Justice Kennedy, who was part of the *McCormick* majority, crystalized this point in a concurring opinion. Mirroring language from the Ninth Circuit in *Carpenter*, Justice Kennedy emphasized that the parties arranging the bribe "need not state the *quid pro quo* in express terms, for otherwise the law's effect could be frustrated by knowing winks and nods." *Evans*, 504 U.S. at 273 (Kennedy, J., concurring). Rather, the agreement could be either express or implied, consistent with the principle that "[t]he criminal law in the usual course concerns itself with motives and consequences, not formalities." *Id.* "For example, a *quid pro quo* with the attendant corrupt motive can be inferred from an ongoing course of conduct." *Id.*

Post-*Evans*, every circuit to have considered the question has held that "explicit" does not mean "express." See *United States v. Allinson*, 27 F.4th 913, 925 (3d Cir. 2022) ("The explicitness requirement does not require an official's specific statement that he will exchange official action for a contribution, but rather requires that the quid pro quo be clear and unambiguous"); *United States v. Blagojevich*, 794 F.3d 729, 738 (7th Cir. 2015) ("'Nudge, nudge, wink, wink, you know what I mean' can amount to extortion under the Hobbs Act"); *United States v. Terry*, 707 F.3d 607, 612–13 (6th Cir. 2013) ("[M]otives and consequences, not formalities,' are the keys for determining whether a public official entered an agreement to accept a bribe"); *United States v. Siegelman*, 640 F.3d 1159, 1171 (11th Cir. 2011) ("the agreement must be *explicit*, but there is no requirement that it be *express*"); *United*

7

*States v. Tomblin*, 46 F.3d 1369, 1381 (5th Cir. 1995) (explicitness requirement satisfied "so long as the terms of the quid pro quo are clear and unambiguous").

In summary: "Explicit, as explained in *Evans*, speaks not to the form of the agreement between the payor and payee, but to the degree to which the payor and payee were aware of its terms, regardless of whether those terms were articulated. Put simply, *Evans* instructed that by 'explicit' *McCormick* did not mean 'express.'" *United States v. Blandford*, 33 F.3d 685, 696 (6th Cir. 1994).

In this context, the *Benjamin* case stands apart. The judge in *Benjamin* believed he was bound by dicta from the Second Circuit that distinguished *Evans* as applying only "in non-campaign contribution cases." *Benjamin*, 2022 WL 17417038 at *8. But this distinction is not supportable. At least part of the bribe in *Evans* was a campaign contribution. *Evans*, 504 U.S. at 257 (bribes encompassed $7,000 cash and a $1,000 check payable to Evans' campaign). The jury instructions said that the defendant claimed the entire bribe was a contribution. *Id.* Justice Kennedy's concurrence described the case as one "in which it is alleged that money was given to the public official in the form of a campaign contribution[.]" *Id.* at 277 (Kennedy, J., concurring). And *Evans* ratified jury instructions that applied "regardless of whether the payment is made in the form of a campaign contribution." *Id.* at 258.

Furthermore, the *Benjamin* judge equated *McCormick*'s explicitness requirement with being "express." *Benjamin*, 2022 WL 17417038 at *8 ("'explicit' and 'express' are synonyms (or at least something very close)"). This also cannot be

8

justified by common definitions of the words when *McCormick* was written. The 1990 edition of Black's Law Dictionary—published one year before *McCormick*—defined "explicit" as "Not obscure or ambiguous, having no disguised meaning or reservation. Clear in understanding." By contrast, Black's Dictionary defined "express" as follows: "Declared in terms; set forth in words. Directly and distinctly stated. Made known distinctly and explicitly, and not left to inference. Manifested by direct and appropriate language, as distinguished from that which is inferred from conduct." See *Blandford*, 33 F.3d at 696 n.13 (citing Black's Law Dictionary (6th ed. 1990)). These definitions convey materially different concepts.

Ultimately, it does not matter whether *Benjamin* got it right or wrong. Even before *Evans*, the Ninth Circuit had interpreted *McCormick*'s standard to mean clear and unambiguous, not express. *Carpenter*, 961 F.2d at 827. In fact, *Benjamin* discussed *Carpenter* and acknowledged that the Ninth Circuit's interpretation "would seemingly encompass a *quid pro quo* that is entirely *implicit*—that is, based on unspoken assumptions, winks and nods[.]" *Benjamin*, 2022 WL 17417038 at *9 (emphasis in original). But because the *Benjamin* judge felt constrained to interpret *McCormick* far differently (requiring an *express* quid pro quo), he dismissed the indictment because it failed to allege "an express promise [that] is necessary when the payments are made in the form of campaign contributions." *Id.* at *13 (quoting *United States v. Ganim*, 510 F.3d 134, 142 (2d Cir. 2007)). Though the indictment *did* allege an agreement that could "be inferred from" the allegations, the indictment

9

could not be saved from dismissal, because those inferences did "not necessarily imply the existence of an explicit or express agreement." *Id.* at *14 and *16.

Tanaka never discloses that the result in *Benjamin* turned exclusively on its outlier interpretation of "explicit." Nor does she identify the Ninth Circuit's contrary interpretation in *Carpenter*, despite paying lip service to the case. See Mot. at 3–4 (citing *Carpenter* for proposition that it requires "clear and unambiguous" agreement without mentioning such agreement need not be express). This is quite a significant omission, because *Benjamin*'s dismissal of the indictment flowed entirely from the absence of "an explicit or express promise." *Id.* at *13; see *id.* at *16. Tanaka even goes so far as to highlight, in bold print, the fact that *Benjamin* required the indictment to contain "an explicit or express agreement." Mot. at 12.

Here, the FSI does not allege an express *quid pro quo* because that is not what the Ninth Circuit requires. The law does not give sophisticated individuals license to engage in bribery so long as they are careful enough to keep their communications hidden. To the contrary, the law trusts juries to decide "the intent with which words were spoken or actions taken as well as the reasonable construction given to them by the official and the payor." *Evans*, 504 U.S. at 274 (Kennedy, J., concurring). In the same vein, the requisite *quid pro quo* with the "attendant corrupt motive" may also be "inferred from an ongoing course of conduct." *Id.*

The FSI hence properly alleges an explicit (clear and unambiguous) *quid pro quo*. Paragraph 21(3) unambiguously states that Keith Kaneshiro agreed to prosecute

10

L.J.M. "[i]n exchange for the campaign contributions given to him by" the MAI defendants. The FSI also contains 18 paragraphs of "Introductory Allegations," multiple subparagraphs describing the "Manner and Means" of the conspiracy, and 52 overt acts, describing how the defendants carried out their criminal agreement. The *Benjamin* case has absolutely nothing to commend to this Court. Because Tanaka's arguments hinge entirely on that decision, her motion should be denied.

> B. IT IS NOT AN ELEMENT OF THE OFFENSE FOR THE *QUID PRO QUO* AGREEMENT TO "PRECEDE AND CONTROL THE OFFICIAL ACT"

Tanaka also spends much of her brief insisting that, with respect to campaign contribution bribery, an "essential element" of the offense is that the *quid pro quo* agreement must "precede and control the official act." See Mot. at 1, 5, 6, 9, 10, 13, and 14. This supposed "element" is cobbled together from a single sentence in *McCormick* and a related sentence in *Benjamin*. See Mot. at 3. The *McCormick* sentence comes after the opinion sets forth the explicit *quid pro quo* requirement, and states: "In such situations the official asserts that his official conduct will be controlled by the terms of the promise or undertaking." *McCormick*, 500 U.S. at 273. But this does not tack an additional element to the offense. This sentence simply describes what an explicit *quid pro quo* arrangement is. Being "controlled" is just another way of saying the parties have come to an agreement and that the terms are clear. It does not add anything more to what prosecutors have to prove.

11

The second sentence—sourced from *Benjamin*—references the language just described and posits that "the explicit agreement must precede the official conduct." *Benjamin*, 2022 WL 17417038 at *16. But this does not create an element, either, because such a sequence clearly is not required. The Supreme Court in *Evans* explained that a substantive bribery offense "is completed at the time when the public official receives a payment in return for his agreement to perform specific official acts; fulfillment of the *quid pro quo* is not an element of the offense." *Evans*, 504 U.S. at 268. The timing of the official act therefore cannot be an element. Similarly, the crime of conspiracy—as is charged here—"does not require completion of the intended underlying offense, but only an agreement to commit the offense and an overt act in furtherance of the agreement." *United States v. Turchin*, 21 F.4th 1192, 1203 (9th Cir. 2022) (internal quotations omitted). If an official act need only be contemplated, but not actually committed, then it makes no sense why there must be any particular sequence between the agreement and the act.

Finally, it is unclear why the court in *Benjamin* believed such a sequence was important in the first place. *Benjamin* dismissed the indictment not because the key events were out of order, but because there was "no explicit agreement" (as the court understood that concept) at all. *Benjamin*, 2022 WL 17417038 at *16. Ultimately, this Court need not dwell too long over the words used in a flawed opinion that did not matter to the erroneous outcome of the case, which may well be reversed.

Despite Tanaka's best efforts to stretch the law, there is no element of the offense requiring that the *quid pro quo* agreement "precedes and controls the official action." Therefore, there is no pleading defect. The FSI alleges an explicit *quo pro quo* agreement—that is enough. It is up to the jury to determine whether the evidence at trial will satisfy the existence of such an agreement.

### C. IT IS THE JURY'S DUTY TO DETERMINE WHETHER THERE WAS AN EXPLICIT *QUID PRO QUO*

Finally, Tanaka suggests in her brief that there was never any explicit *quid pro quo* and the prosecution's case is based wholly "on the delivery of the official actions (*quo*) as adequate proof of the illicit agreement (*pro*)." Mot. at 13–14. The expansive allegations in the FSI belie that assertion. But in any event, this is not the time for Tanaka to make it. The FSI need only "be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1). "An indictment is sufficient if it contains the elements of the charged crime in adequate detail to inform the defendant of the charge and to enable him to plead double jeopardy." *United States v. Awad*, 551 F.3d 930, 935 (9th Cir. 2009) (internal quotations omitted). Of course, an indictment is not evidence, *United States v. Utz*, 886 F.2d 1148, 1151 (9th Cir. 1989), and its purpose is not to present for the defense all the "supporting evidence, but only the essential facts necessary to apprise a defendant of the crime charged." *United States v. Buckley*, 689 F.2d 893, 897 (9th Cir. 1982). The adequacy of the United States' proof must be judged by the petit jury at trial, not on the face of the pleadings via a pretrial motion to dismiss.

13

Tanaka also claims that the United States improperly "invited the grand jury to indict" with inadequate evidence of an explicit *quid pro quo* agreement. Mot. at 13. But "[t]he grand jury gets to say—without any review, oversight, or second-guessing—whether probable cause exists to think that a person committed a crime." *Kaley v. United States*, 571 U.S. 320, 328 (2014). Here, the grand jury spoke by returning an indictment with a clear allegation that there was an explicit *quid pro quo* arrangement between Kaneshiro and his co-conspirators. FSI ¶ 21(3). "An indictment fair upon its face and returned by a properly constituted grand jury" provides "no authority for looking into and revising the judgment of the grand jury upon the evidence, for the purpose of determining whether or not the finding was founded upon sufficient proof." *Kaley*, at 328 (cleaned up).

## IV

## CONCLUSION

The Court should deny Tanaka's third motion to dismiss.

Dated: June 9, 2023                    Respectfully submitted,

                                   MERRICK B. GARLAND
                                   Attorney General
                                   RANDY S. GROSSMAN
                                   United States Attorney

                                   */s/ Andrew Y. Chiang*
                                   MICHAEL G. WHEAT
                                   JOSEPH J.M. ORABONA
                                   JANAKI G. CHOPRA
                                   COLIN M. MCDONALD
                                   ANDREW Y. CHIANG
                                   Special Attorneys

UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>KEITH MITSUYOSHI KANESHIRO (1),<br>DENNIS KUNIYUKI MITSUNAGA (2),<br>TERRI ANN OTANI (3),<br>AARON SHUNICHI FUJII (4),<br>CHAD MICHAEL MCDONALD (5),<br>SHERI JEAN TANAKA (6),<br><br>　　　　　　　Defendants. | CR No. 22-00048-JMS-WRP<br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED that:

I, Andrew Y. Chiang, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, CA 92101-8893. I am not a party to the above-entitled action. I have caused service of the foregoing on all parties in this case by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 9, 2023.　　　　　　　/s/ Andrew Y. Chiang
　　　　　　　　　　　　　　　　　　　　ANDREW Y. CHIANG