SEALED

BY ORDER OF THE COURT

Mark Mermelstein (CA SBN 208005)
Andrew S. Cowan (CA SBN 165435)
HOLMES, ATHEY,
COWAN & MERMELSTEIN LLP
811 Wilshire Boulevard, Suite 1460
Los Angeles, California 90017
Telephone: (213) 985-2200
Fax: (213) 973-6282
Email: mmermelstein@holmesathey.com
acowan@holmesathey.com

Attorneys for Defendant Sheri Jean Tanaka

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
Feb 06, 2024, 4:22 pm
Lucy H. Carrillo, Clerk of Court

UNSEALED BY ORDER OF THE COURT
DATE: 2/17/2026, see ECF No. 5,
MC 26-00010 SASP-KJM

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR-22-00048-TMB-WRP |
| Plaintiff, | **DEFENDANT SHERI J. TANAKA'S SEALED MOTION TO CONTINUE TRIAL DATE; DECLARATION OF COUNSEL; CERTIFICATE OF SERVICE** |
| v. | |
| KEITH MITSUYOSHI KANESHIRO (1), DENNIS KUNIYUKI MITSUNAGA (2), TERRI ANN OTANI (3), AARON SHUNICHI FUJII (4), CHAD MICHAEL MCDONALD (5), SHERI JEAN TANAKA (6), | Judge: Hon. Timothy M. Burgess<br>Trial Date: February 27, 2024 |
| Defendants. | **[UNDER SEAL]**<br><br>**[EXPEDITED CONSIDERATION REQUESTED]** |

Defendant Sheri Jean Tanaka brings this Motion to Continue the February 27, 2024 trial date in this matter ("Motion") for the reasons explained below. Due to the pendency of the trial date, Ms. Tanaka respectfully asks the Court to consider her Motion on an expedited basis and to set an expedited briefing schedule.

Ms. Tanaka respectfully submits that a continuance of the February 27, 2024 trial date in *United States v. Kaneshiro, et al.*, No. CR-22-048-TMB-WRP ("Kaneshiro Case") is warranted under the circumstances and existing case law. As discussed more fully below, the factors used by courts in the Ninth Circuit to evaluate continuance requests weigh strongly in favor of continuance. Ms. Tanaka has never before requested a continuance in this case and does not make this request lightly, as she had been eager to proceed to trial and respond to the government's charges.

A continuance is now necessary given the magnitude of the seismic shake-up in the Kaneshiro Case over the past 13 days, which began with the government's execution of a search warrant on Ms. Tanaka's residence ("January 23 Search"). In rapid-fire succession came the seizure of critical materials being used for Ms. Tanaka's defense, the recusal of the presiding judge, the government's disclosure of serious new allegations against Ms. Tanaka, and the reassignment of the case to this Court. The resulting uncertainty and disruption are exigent and unforeseen circumstances that strongly warrant a continuance. This is not a run-of-the-mill situation where a party seeks a continuance because they will be on vacation or defense counsel wants more time to prepare. The January 23 Search created significant issues that will impact Ms. Tanaka's ability to

receive a fair trial in the Kaneshiro Case, coupled with the serious allegations made by the government in connection with its new investigation.

The Court should also consider the fact that none of this happened by accident or in a vacuum. The government unilaterally made the deliberate decision and value judgment to execute a search warrant on a criminal defendant *one month before her trial was scheduled to begin*, and to seize her case preparation materials. This is tantamount to deciding to raid a law firm's offices and then insisting the firm be ready for trial the following week despite the seizure of its trial preparation materials. The government surely considered the likelihood that executing the search warrant at that highly sensitive juncture might require a continuance for Ms. Tanaka—but apparently determined that investigating Ms. Tanaka took precedence. That was the government's decision to make, but its consequences are devastating to Ms. Tanaka's ability to prepare for trial. Granting Ms. Tanaka's Motion for a continuance is compelled by case precedent, common sense, fundamental notions of fairness, and the need to get things right and not proceed to trial under a cloud of unresolved Due Process, Fifth Amendment, and Sixth Amendment issues created by the January 23 Search.

## FACTUAL BACKGROUND

On January 23, 2024, federal agents executed a search warrant at Ms. Tanaka's home in Manhattan Beach, California (the "January 23 Search"). During the January 23 Search, the government seized Ms. Tanaka's two iPhones, computer, and a USB hard drive. Given Ms. Tanaka's extensive reliance on her electronic devices to store data, the

3

January 23 Search essentially divested her of significant amounts of data in one fell swoop.

The next day, January 24 at 8:39 a.m., Judge Seabright recused himself (presumably after the government advised him of the search and the nature of its investigation). (ECF 351). Later that day, at 3:57 p.m., the government filed an under seal Notice indicating that it is investigating Tanaka for (allegedly) engaging "in acts threatening the safety of the former judge in this case and a special attorney prosecuting the matter." (the "Alleged Tanaka Conduct"). (ECF 356). The next day, January 25 at 10:35 a.m., the Kaneshiro Case was reassigned to the Honorable Timothy M. Burgess.

These extraordinary events are not all that transpired over the past 13 days. To date, the government has not provided Ms. Tanaka's counsel with any further information or evidence regarding its investigation of the Alleged Tanaka Conduct, or returned her seized devices or materials to her. In fact, the only known information is that the government may not return the seized materials until late March 2024, more than one month after trial in the Kaneshiro Case is scheduled to begin. Ms. Tanaka's counsel was informed that a separate filter team in the District of Arizona will conduct the initial review of the seized items. Presumably, the District of Arizona will provide government counsel in the Kaneshiro Case with information obtained from the January 23 Search that is relevant to the Kaneshiro Case, which may include materials that are exculpatory or inculpatory, and potentially subject to Fed. R. Crim. P. 404(b). Based upon the government's Notice, it does not appear that the government is investigating any other

defendant in the Kaneshiro Case in connection with the Alleged Tanaka Conduct.

There is no question that a massive quantity of digital data was seized from Ms. Tanaka's residence, including two iPhones, her computer, and a USB drive. The government has not yet returned Ms. Tanaka's digital data or devices to her. These materials were important for Ms. Tanaka's defense, due to the reasons explained in the *in camera* Addendum submitted to the Court on February 5, 2024 ("Second *In Camera* Addendum").

On January 28, 2024, undersigned counsel for Ms. Tanaka, Mark Mermelstein, reached out to government counsel in the Kaneshiro Case to discuss the effect that the investigation of the Alleged Tanaka Conduct might have for the trial in the Kaneshiro Case. *See* attached Declaration of Mark Mermelstein ("Mermelstein Decl.") at ¶ 7. On January 29, 2024, lead prosecutor Michael Wheat replied to Mr. Mermelstein's email and indicated that "the better course of action is for you to reduce your concerns to writing and then we will endeavor to respond, if appropriate." *Id.* Later that day, Mr. Mermelstein responded with an email asking the government specific questions, including whether it would seek to introduce at trial evidence seized in the January 23 Search or otherwise related to the new investigation of the Alleged Tanaka Conduct. *Id.* On January 30, 2024, Special Attorney Wheat declined to answer that question, stating that the investigation was being handled by the District of Arizona and that government counsel in the Kaneshiro Case "do[es] not have knowledge of or access to evidence regarding it." *Id.*

## ARGUMENT

As the United States Supreme Court has noted, a trial judge has broad discretion in deciding a motion to continue a trial. *See Morris v. Slappy*, 461 U.S. 1, 11 (1983). In determining whether a defendant's request to continue a trial is warranted, the Ninth Circuit generally considers four factors: (1) counsel's diligence in preparing the defense prior to the trial date; (2) whether the continuance would satisfy the defendant's needs; (3) the inconvenience a continuance would cause the Court and the government; and (4) the extent to which the defendant would suffer harm if the continuance was denied. *See United States v. Zamora-Hernandez*, 222 F.3d 1046, 1049 (9th Cir. 2000), *citing United States v. Flynt*, 756 F.2d 1352, 1359 (9th Cir. 1985). In this analysis, "[t]he fourth factor is the most critical." *Zamora-Hernandez*, 222 F.3d at 1049, *citing United States v. Mejia*, 69 F.3d 309, 316 (9th Cir. 1995). Here, the factors favor a continuance for Tanaka.

**1. Ms. Tanaka's Counsel Has Diligently Prepared For Trial**

The first factor is counsel's diligence in preparing the defense prior to trial. *Mejia*, 69 F.3d at 315. Naturally, courts do not want to continue cases just because defense counsel squandered its time and now wants more. But this case presents a very unique fact pattern that favors continuance.

Ms. Tanaka has never asked for a continuance in this case. There is no evidence to suggest that Ms. Tanaka's counsel has acted to prevent the case being ready for trial through sloth, inattention, or dilatory tactics. To the contrary, undersigned counsel has (i) represented Ms. Tanaka since before the Indictment was filed in the Kaneshiro Case,

(ii) been part of the defense of the Kaneshiro Case since Ms. Tanaka was charged, (iii) attended every hearing before the Court for the last 18 months, (iv) diligently prepared for trial, and (v) stood ready to proceed to trial on February 27, 2024. *See* Mermelstein Decl., ¶ 3. This all changed in an instant on January 23. Ms. Tanaka's trial preparations were thrown into disarray due to: (i) the January 23 seizure of Ms. Tanaka's data; and (ii) the government's January 24 Notice about its investigation and the nature of the Alleged Tanaka Conduct.

As discussed further below, these facts require a continuance. These circumstances were totally unforeseeable by Ms. Tanaka's counsel, and no amount of diligence could have prepared them for it. There is no indication in the record that Ms. Tanaka's counsel has been anything less than diligent throughout the Kaneshiro Case. Rather, the need for a continuance stems from unforeseeable circumstances outside counsel's control or foresight. *See Mejia*, 69 F.3d at 316 (finding this factor weighed in defendant's favor where there was "no indication from the record and the government does not argue that [counsel] was less than diligent" and noting that the need for a continuance was due to factors outside counsel's control). Accordingly, this factor weighs in favor of a continuance.

**2.    A CONTINUANCE IS CRITICAL FOR MS. TANAKA TO RECOVER VITAL MATERIALS NECESSARY FOR TRIAL PREPARATION AND TRIAL AND TO DETERMINE WHETHER THE GOVERNMENT WILL SEEK TO INTRODUCE AT TRIAL ANY SEIZED MATERIALS.**

The second factor for a court to consider with a continuance request "is the likelihood that the continuance would serve a useful purpose." *Mejia*, 69 F.3d at 315. For multiple reasons, a continuance is critical to protect Ms. Tanaka's constitutional rights and her ability to receive a fair trial.

On January 23, the government seized Ms. Tanaka's two iPhones, computer, and a USB hard drive. Mermelstein Decl. at ¶ 4. As of the date of this Motion, none of those materials have been returned to her. *Id.* at ¶ 5. In fact, the search warrant indicates that the government may not return the seized electronic devices for up to 60 days, which would be late March 2024, or nearly a month after the trial is scheduled to begin. *Id.* at ¶ 6. Ms. Tanaka's counsel reached out to prosecutors in the District of Arizona, who are conducting the search of the seized material for the government, to inquire when the seized items would be returned, but received no response as of the date this Motion was filed. *Id.* at ¶ 8. Until the seized items are returned, and the government properly notifies Ms. Tanaka how those materials may be used in the Kaneshiro Case, Ms. Tanaka's defense at the upcoming trial will be severely prejudiced. The January 23 Search created several simultaneous and overlapping problems that implicate different rights, discussed below:

### a. Ms. Tanaka's Fifth Amendment Due Process Rights To Fundamental Fairness Are Abrogated By The Government's Seizure of Materials Necessary For Her Defense.

The materials prepared by Ms. Tanaka that were seized by the government are described in the Second *In Camera* Addendum.  Requiring Ms. Tanaka to proceed to trial in the immediate aftermath of the seizure of these materials deprives her of her Due Process rights to fundamental fairness at her trial.  *See United States v. Valenzuela*, 458 U.S. 858, 872 (1982) ("Due process guarantees that a criminal defendant will be treated with that fundamental fairness essential to the very concept of justice.") (internal citation omitted).  It further denies her (1) the right under the Confrontation Clause to cross-examine the government's witnesses, and (2) the right to present a defense under the Compulsory Process Cause. *See Crane v. Kentucky*, 476 U.S. 683, 690 (1986) ("[w]hether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or the Confrontations Clause of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'"  Moreover, it (3) deprives her of her rights under the Due Process Clause if the unavailable evidence possessed exculpatory value. *See California v. Trombetta*, 467 U.S. 479, 489 (1984).

By contrast, granting a continuance creates a situation that would allow the government to return the seized materials to Ms. Tanaka so that she and her counsel have adequate time to use them for trial preparation, as opposed to the prejudice that would result by compelling her to proceed to trial without them.

9

As the Supreme Court noted, there is no "one size fits all" approach to evaluating "due process," which has never been precisely defined and "is not a technical conception with a fixed content unrelated to time, place and circumstances." *Lassiter v. Dep't. of Social Servs. of Durham County, N.C.*, 452 U.S. 18, 24-25 (1981) (internal citations omitted). "Rather, the phrase expresses the requirement of 'fundamental fairness,' a requirement whose meaning can be as opaque as its importance is lofty. Applying the Due Process Clause is therefore an uncertain enterprise which must discover what 'fundamental fairness' consists of in a particular situation . . .." *Id.* "(D)ue process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976).

The concept of "fundamental fairness" requires that Ms. Tanaka and her defense team have uninterrupted access to Ms. Tanaka's working defense files during the critical month before trial and during trial itself. A continuance is a flexible procedural protection that will safeguard Ms. Tanaka's due process rights.

    **b. Ms. Tanaka's Sixth Amendment Right To Effective Assistance Of Counsel Is Abrogated If The Government Introduces Late-Discovered Materials From The January 23 Search**

A second reason for a continuance is the need to provide adequate time for Ms. Tanaka's counsel to receive, review, and challenge the admissibility of evidence that has been gathered in the course of the government's new investigation, to the extent that it may seek to introduce such evidence at trial in the Kaneshiro Case.

At present, government counsel in the Kaneshiro Case has not confirmed that it will not attempt to use materials seized during the January 23 Search in the Kaneshiro Case, either in its case-in-chief, on rebuttal, or as Rule 404(b) evidence. Moreover, prosecutors from the District of Arizona who are reviewing these materials declined to provide any clarity on the timeline of events. *See* Mermelstein Decl. at ¶ 8. Nor has the government ruled out seeking to admit the Alleged Tanaka Conduct at trial. *Id.* at ¶ 7.

Should the government seek to introduce such evidence, multiple complications arise. To the extent that it may seek to introduce seized evidence at the eleventh hour, Ms. Tanaka would not have received sufficient notice or information to challenge the legality of the seizure under the Fourth Amendment. To the extent that it may seek to introduce other evidence obtained in the course of its new investigation, Ms. Tanaka's defense counsel will not have a chance to see these materials in enough time to prepare to address them at the trial. At present, the government holds all the cards and can unilaterally dictate how fast it reviews materials seized in the January 23 Search, other evidence obtained during the investigation, and whether and how it shares them with the defense.

Considering that the trial is presently scheduled to begin in three weeks, these issues severely prejudice Ms. Tanaka's Sixth Amendment right to effective assistance of counsel, because her counsel cannot be effective if they are going to get sandbagged with reams of new evidence at the last minute. As the court noted when considering this factor while granting a motion for a continuance in *United States v. Wilke*, No. CR19-5364

11

BHS, 2020 WL 92005, at *2 (W.D. Wash. Jan. 8, 2020), "[c]ounsel cannot exercise

diligence by reviewing and following up on material that has not yet been disclosed." *See

also United States v. Garrett*, 179 F.3d 1143, 1147 (1999) ("When a motion for a

continuance arguably implicates a defendant's Sixth Amendment right to counsel, the

court must consider the effect of its decision on this fundamental right.  A defendant's

right to counsel is central to our system of justice.").

### c. Ms. Tanaka's Rights To *Brady* And *Jencks* Materials Cannot Be Met Given The Tight Timeline With The Currently-Scheduled Trial Date

A continuance will serve an additional purpose.  The government has separate and

ongoing obligations to disclose information pursuant to *Brady v. Maryland*, 373 U.S. 83

(1963) and *Jencks v. United States*, 353 U.S. 657 (1957).  The government has not yet

done so with respect to anything seized in the January 23 Search.  But if the government

does produce these items to Ms. Tanaka's counsel (and the other defendants), there will

not be sufficient time to review those materials between now and the trial date and litigate

(as needed) if *Brady* and *Jencks* materials were fully produced.

Broadly speaking, a continuance will resolve the most significant important issues

created by the January 23 Search: (1) restoring Ms. Tanaka and her counsel to the

position they were in before the seizure of Ms. Tanaka's case-preparation materials;

(2) determining whether the government intends to use any of the seized materials; and

(3) if the government does seek to use them, to allow Ms. Tanaka and her co-defendants

reasonable time to evaluate and challenge the admissibility of such evidence.  Because

both issues implicate important Constitutional rights and Ms. Tanaka's right to fundamental fairness, this factor weighs in favor of a continuance.

**3.**    **THE CIRCUMSTANCES DO NOT SUPPORT A FINDING OF INCONVENIENCE**

Inconvenience to the government or to the Court is not a factor that weighs heavily against continuance here.  "[A] finding of inconvenience should be based on such factors as the court's necessity to reschedule other pending matters, the ability of witnesses to appear at the continued hearing or trial, and any inconvenience to the opposing party." *Kaina v. County of Maui*, Cv. No. 04–00608 DAE–LEK,  2007 WL 11153829, at *5 (D. Haw. Apr. 18, 2007), citing *United States v. Rivera–Guerrero,* 426 F.3d 1130, 1141 (9th Cir. 2005).

*Government:* As for inconvenience to the government, this factual scenario is highly unusual.  It is extremely rare for the government to execute a search warrant in a different-but-related Matter #2 one month before the start of a trial in Matter #1.

The government knew full well that its unilateral actions would have significant implications for the *Kaneshiro* trial, in particular their direct impact on the due process rights of Ms. Tanaka.   As stated previously, the seizure and ongoing investigation significantly prejudice Ms. Tanaka's constitutional rights and her ability to prepare for trial.  It is respectfully submitted that any inconvenience to the government from a continuing the trial date is a direct result of the government's own actions, and the Court should therefore give it little if any weight.

*Witnesses:* As for inconvenience to witnesses, no evidence has been presented suggesting that holding the trial at a time later than February 27, 2024 will make any witness unavailable.  In *Kaina*, the court found that the inconvenience factor did not apply where the continuance would not have noticeably affected the opposing party's ability to procure witnesses, and noted that "out of state witnesses usually will experience some degree of inconvenience when appearing before a court in Hawaii due to the state's remote location," so the specific time of year is not determinative.  2007 WL 11153829, at *5.

*Court:*  As for inconvenience to the Court, Ms. Tanaka is acutely aware of it and does not move for a continuance lightly.  But again, these are truly extraordinary circumstances, to which the Court and defendants are reacting day-to-day.

It is respectfully submitted that the inconvenience to the Court, which was specially assigned to the case less than two weeks ago, is less than the inconvenience a continuance would have caused Judge Seabright, who had been hearing it all along and had specifically carved out two months from a busy trial schedule to accommodate this trial.  *See Rivera–Guerrero,* 426 F.3d at 1141 (finding no inconvenience where delay would not have required rescheduling other matters or otherwise have caused any significant inconvenience to the court); *Kaina*, 2007 WL 11153829, at *5 (same).

For these reasons, the factor of inconvenience to the government, witness and the

Court should not weigh heavily in determining the need for a continuance.[1]

## 4.    MS. TANAKA WILL EXPERIENCE EXTREME PREJUDICE WITHOUT A CONTINUANCE

The "fourth and most important factor is the extent of the prejudice the defendant would suffer if the continuance was denied." *Wilke*, 2020 WL 92005, at *4, *citing Zamora-Hernandez*, 222 F.3d at 1049. In cases where the defendant alleges that the denial of a continuance would affect their ability to present evidence, the Ninth Circuit has held that the prejudice standard is "less stringent" than the "clearest showing of actual and substantial prejudice" standard applied in cases involving the inability to obtain discovery. *United States v. Kloehn*, 620 F.3d 1122, 1128 (2010) (overturning district court's denial of motion for continuance). The Court's focus on the "prejudice inquiry is the extent to which the aggrieved party's right to present his defense [may be] affected." *Id.* Here, the factor weighs heavily in Ms. Tanaka's favor for the following reasons:

**First**, as previously stated, Ms. Tanaka and her counsel have lost access to materials that would have helped them prepare for trial. *See* discussion *supra* at 5. This prejudices Ms. Tanaka's ability to present evidence at trial, which should prompt the Court to apply a "less stringent" prejudice standard. *Kloehn*, 620 F.3d at 1128. Her

---

[1] Inconvenience to co-defendants is not a factor considered by the Court in a continuance motion. But the Court should note that Ms. Tanaka filed a Motion for Severance concurrently with her Motion for Continuance. If Ms. Tanaka's co-defendants object to a continuance, and if the Court finds those objections compelling, there is a simple remedy to satisfy all parties: the Court may grant the Motion for Severance as to Ms. Tanaka and deny or find moot the Motion for Continuance, thereby allowing the remaining defendants to proceed to trial in the Kaneshiro Case on February 27, 2024.

counsel has been preoccupied with addressing the issues that arose from the January 23

search, instead of focusing on core trial preparation issues, such as jury selection, jury

instructions, witness interviews, and cross-examination outlines.  In short, the January 23

Search threw Ms. Tanaka's trial preparation into a state of disarray that will cause her

prejudice absent a continuance.

     **Second**, as previously discussed, if the government intends to use any material

seized during the January 23 Search, or to introduce evidence from the new investigation

as Rule 404(b) evidence, then Tanaka is severely prejudiced by the fact that she has not

yet received any related discovery, and therefore cannot challenge its admissibility in any

meaningful way, either under the Fourth Amendment or the Rules of Evidence.  *See*

discussion *supra* at 10-12.

     **Third**, as previously argued, there are also *Brady* and *Jencks* considerations that

are implicated if the government will use or reference anything found it the January 23

Search in the upcoming trial.  *See* discussion *supra* at 12.

     **Fourth**, if the government intends to cross-examine Tanaka about the new

investigation or any materials seized from her home during the January 23 Search,

that may impact her decisions about testifying, which implicates her Fifth

Amendment rights.  Ms. Tanaka cannot knowingly and intelligently decide whether

to testify when that fundamental fact is unknown, and forcing her to proceed to trial

on February 27 is therefore highly prejudicial.   Due process requires that Ms. Tanaka

does not receive "trial by ambush," but forcing her to make such important decisions,

in a complete information vacuum, based on events that only recently occurred, is a prejudicial burden when factoring a trial scheduled to begin in three weeks.

## **CONCLUSION**

Ms. Tanaka understands that it is extraordinary to seek a continuance three weeks before trial. But these are extraordinary circumstances. The unanticipated developments over the past 13 days require a continuance of the trial so that Ms. Tanaka's trial preparations can be stabilized, her constitutional rights protected, and a fair trial ensured. Ms. Tanaka respectfully submits that the four factors to be considered by the Court weigh in favor of granting her Motion for Continuance. Ms. Tanaka respectfully requests a continuance to a date at least 45 days after the government returns to her all of the seized materials.

DATED: February 5, 2024                    Respectfully submitted,

                                           HOLMES, ATHEY,
                                           COWAN & MERMELSTEIN LLP


                                           By:  */s/ Mark Mermelstein*
                                              MARK MERMELSTEIN

                                              Attorneys for Defendant
                                              Sheri Jean Tanaka

## DECLARATION OF MARK MERMELSTEIN
## IN SUPPORT OF MOTIONS
## TO CONTINUE CURRENT TRIAL DATE &
## TO SEVER TANAKA TRIAL FROM CO-DEFENDANTS

I, Mark Mermelstein, declare as follows:

1.      I have personal knowledge of the following facts, and if called as a witness, I could and would testify competently as follows.

2.      I represent defendant Sheri Jean Tanaka in *United States of America v. Keith Mitsuyoshi Kaneshiro et al.,* Case No. CR-22-48-TMB-WRP.  I make this declaration in support of Defendant Sheri J. Tanaka's Motion to Continue Current Trial Date and Defendant Sheri J. Tanaka's Motion to Sever Trial from Co-Defendants.

3.      I have (i) served as Ms. Tanaka's legal counsel since before the Indictment was filed in the Kaneshiro Case, (ii) been part of the defense of the Kaneshiro Case since Ms. Tanaka was charged, (iii) with the exception of hearings where prospective jurors completed questionnaires, attended every hearing before the Court for the last 18 months, (iv) diligently prepared for trial, and (v) stood ready to proceed with trial on February 27, 2024.

4.      My understanding is that the government conducted a search of Ms. Tanaka's residence on January 23, 2024, and that during that search, it seized materials from Ms. Tanaka's residence, including her phones, computer, and

1

certain USB hard drives.  I have reviewed the inventory of seized materials which

confirms my understanding.

5.      As of today's date, none of these materials have been returned to her,

whether through me or directly to her.

6.      The search warrant indicates that the government may not return the

seized devices for up to 60 days, which would be late March 2024, or nearly a

month after the trial is scheduled to begin.

7.      On January 28, 2024, I reached out to the prosecution team in the

Kaneshiro Case to discuss the effect that the investigation of Ms. Tanaka might

have for the trial date in this case.  On January 29, 2024, Special Attorney Michael

Wheat replied and stated that "the better course of action is for you to reduce your

concerns to writing and then we will endeavor to respond, if appropriate." Later

that day, I responded with an email asking the government several questions,

including whether it would seek to introduce at trial evidence related to the new

investigation.  At 5:32 PM on January 30, Special Attorney Wheat declined to

answer that question, stating that the investigation was being handled by the

District of Arizona and that the prosecution team therefore "do not have knowledge

of or access to evidence regarding it."

8.      Between January 23 and January 30, 2024, I exchanged a series of

emails with Assistant U.S. Attorney for the District of Arizona David Savel who

2

identified himself as the attorney assigned "filter AUSA responsibilities regarding the search warrant being executed at Ms. Tanaka's residence" and William Voit, Chief of the Criminal Division of the U.S. Attorney's Office for the District of Arizona. Among other things, I asked to have a telephone conversation with them. Mr. Savel's response indicated that his role was spelled out in Appendix D of the warrant. He did not respond affirmatively to my request to speak. I then asked in writing when Ms. Tanaka could expect to receive in return the devices seized from her. I did not receive any response to that written request. As such, these prosecutors have declined to provide any clarity on the timeline of events.

9.     Shortly after the execution of the search warrant, I was informed by Ms. Tanaka's husband, Lou Shoch, that there was at least one member of the public observing the search at their residence.

10.     On January 24, 2024, hours after Judge Seabright recused himself from the Kaneshiro Case, I received an email inquiry from a reporter at Honolulu Civil Beat asking if I knew the reason for the recusal.

11.     Over the past week, I have been informed by counsel for most of Ms. Tanaka's co-defendants that they oppose a continuance of the trial date.

Executed this Fifth day of February, 2024 at Honolulu, Hawaii.


                                         */s/ Mark Mermelstein*
                                         MARK MERMELSTEIN

3

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document will

be served on the following counsel at their last known addresses on the date

indicated below.

MICHAEL G. WHEAT, ESQ.              ***Attorneys for the United States of***
JOSEPH J.M. ORABONA, ESQ.           ***America***
JANAKI G. CHOPRA, ESQ.
COLIN M. MCDONALD, ESQ.
ANDREW Y. CHIANG, ESQ.
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101
E-mail: michael.wheat@usdoj.gov
        joseph.orabona@usdoj.gov
        Janaki.Chopra@usdoj.gov
        Colin.McDonald@usdoj.gov
        Andrew.Chiang@usdoj.gov


CRYSTAL G. K. GLENDON               ***Attorney for Defendant Sheri Jean***
Glendon & Ponce, LLLC               ***Tanaka***
1001 Bishop St., Suite 710
Honolulu, Hawaii 96813
E-mail: crystal@glendonponce.com


BIRNEY B. BERVAR, ESQ.              ***Attorney for Defendant Keith***
Bervar & Jones                      ***Mitsuyoshi Kaneshiro***
1100 Alakea Street, 20th Floor
Honolulu, Hawaii 96813
E-mail: bbb@bervar-jones.com


NINA MARINO                         ***Attorneys for Defendant Dennis***
JENNIFER LIESER                     ***Kuniyuki Mitsunaga***
Kaplan Marino, PC
1546 N. Fairfax Avenue
Los Angeles, CA 90046
E-mail: marino@kaplanmarino.com
        lieser@kaplanmarino.com

JOHN M. SCHUM, ESQ.                    ***Attorneys for Defendant Dennis***
Law Office of John Schum               ***Kuniyuki Mitsunaga***
P.O. Box 1241
Honolulu, Hawaii 96807
E-mail: John@JohnSchum.com


DORIS LUM, ESQ.                        ***Attorney for Defendant Terri Ann***
Law Office of Doris Lum, LLLC          ***Otani***
1001 Bishop Street, Suite 710
Honolulu, Hawaii 96813
E-mail: doris@dorislumlaw.com


ANDREW M. KENNEDY, ESQ.                ***Attorney for Defendant Aaron***
Schlueter Kwiat & Kennedy LLLP         ***Shunichi Fujii***
Atrium Court
75-167 Kalani St, Ste. 201
Kailua Kona, HI 96740
E-mail: Andrew@kona-lawyer.com


THOMAS M. OTAKE, ESQ.                  ***Attorney for Defendant Chad***
Thomas M. Otake AAL, ALC               ***Michael McDonald***
851 Fort Street Mall, Suite 400
Honolulu, Hawaii 96813
E-mail: thomas@otakelaw.com


DATED:  February 5, 2024          Respectfully submitted,

                                  HOLMES, ATHEY,
                                  COWAN & MERMELSTEIN LLP


                                  By:   */s/ Mark Mermelstein*
                                        MARK MERMELSTEIN

                                        Attorneys for Defendant
                                        Sheri Jean Tanaka