SEALED
BY ORDER OF THE COURT

Mark Mermelstein (CA SBN 208005)
Andrew S. Cowan (CA SBN 165435)
HOLMES, ATHEY,
COWAN & MERMELSTEIN LLP
811 Wilshire Boulevard, Suite 1460
Los Angeles, California 90017
Telephone: (213) 985-2200
Fax: (213) 973-6282
Email: mmermelstein@holmesathey.com
        acowan@holmesathey.com

Attorneys for Defendant Sheri Jean Tanaka

FILED N THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
Feb 06, 2024, 4:24 pm
Lucy H. Carrillo, Clerk of Court

UNSEALED BY ORDER OF THE COURT
DATE: 2/17/2026, ECF No. 5,
MC 26-00010 SASP-KJM

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KEITH MITSUYOSHI KANESHIRO (1),<br>DENNIS KUNIYUKI MITSUNAGA (2),<br>TERRI ANN OTANI (3),<br>AARON SHUNICHI FUJII (4),<br>CHAD MICHAEL MCDONALD (5),<br>SHERI JEAN TANAKA (6),<br><br>Defendants. | Case No. CR-22-00048-TMB-WRP<br><br>**DEFENDANT SHERI J. TANAKA'S MOTION TO SEVER TRIAL FROM CO-DEFENDANTS; EXHIBIT 1; CERTIFICATE OF SERVICE**<br><br>Judge: Hon. Timothy M. Burgess<br>Trial Date: February 27, 2024<br><br>**[UNDER SEAL]**<br><br>**[EXPEDITED CONSIDERATION REQUESTED]** |

Defendant Sheri Jean Tanaka brings this Motion to Sever her trial in this matter from that of her co-defendants ("Motion").  She respectfully submits that severing her trial is required under the circumstances and existing case law.  As discussed more fully below, the factors used by federal courts to evaluate such requests weigh strongly in favor of severance.  This results from the unexpected and extraordinary developments over the past 13 days, which began with the government's January 23, 2024 execution of a search warrant on Ms. Tanaka's residence ("January 23 Search") and the seizure of critical materials Ms. Tanaka's had been using for her defense and trial preparation.[1]  Due to the pendency of the trial date, Ms. Tanaka respectfully asks the Court to consider her Motion on an expedited basis and to set an expedited briefing schedule.

Severance is needed for four fundamental reasons:

**<u>First</u>**, the government seized important trial preparation materials from Ms. Tanaka during the January 23 Search.  Being deprived of these materials prejudices Ms. Tanaka's ability to present her case at trial so significantly as to violate her Fifth and Sixth Amendment's rights to "fundamental fairness" and effective assistance of counsel. Moreover, the government has not confirmed, one way or the other, whether it will (i) seek to introduce materials seized during the January 23 Search in the Kaneshiro Case or

_____

[1] Ms. Tanaka here incorporates by reference the Factual Background section set forth in her concurrently-filed Motion to Continue Trial Date.  Additional information supporting Ms. Tanaka's Motion to Sever Trial is provided in the materials submitted to the Court *in camera* on February 1, 2024 ("First *In Camera* Submission"), and in the *in camera* Addendum submitted to the Court concurrently with this Motion on February 5, 2024.

(ii) attempt to disclose the Alleged Tanaka Conduct in the Kaneshiro Case. As explained in Ms. Tanaka's concurrently-filed Motion for Continuance, the combination of these two issues warrant a continuance of the trial date for Ms. Tanaka.

However, counsel for Ms. Tanaka's co-defendants have advised undersigned counsel that they do not want a continuance. Accordingly, the preferred and commonsense remedy is to sever Ms. Tanaka so that: (1) the remaining co-Defendants can proceed with trial on February 27, 2024; and (2) Ms. Tanaka can proceed to trial after her seized materials are returned. This would restore the *status quo* of where Ms. Tanaka stood before the January 23 Search.

**Second**, as the government represented to the Court in its January 24 Notice, the Alleged Tanaka Conduct at the heart of the government's new investigation is that Ms. Tanaka threatened the safety of the prior trial judge and a prosecutor. If even a whisper of that information were introduced in the Kaneshiro Case, it would be highly prejudicial to Ms. Tanaka's co-defendants, to the point where a limiting instruction to the jury would be ineffective. Putting aside the threshold questions of admissibility under Fed. R. Crim. P. 404(b) and 403, the government has no grounds to introduce that evidence against anyone other than Ms. Tanaka. Severing her from the other co-defendants eliminates this serious problem of prejudice and allows a fair trial for the co-defendants. Moreover, even if the Court excludes such evidence, a strong likelihood exists that the public will learn of the government's investigation into Ms. Tanaka and this may taint the jury, potentially creating grounds for a mistrial.

3

**Third**, the nature of the Alleged Tanaka Conduct, combined with the information provided in the two *in camera* Submissions, are highly unusual circumstances that strongly warrant a severance. This is not a typical severance request where one party just does not like a co-defendant or they have conflicting trial strategies or defenses. The circumstances create significant issues that will impact Ms. Tanaka's ability to receive a fair trial in the Kaneshiro Case and will significantly prejudice her if she is not severed from her co-defendants.

**Fourth,** severance is warranted for the reasons set forth in the *In Camera* Addendum to Tanaka Motion to Sever, filed concurrently with this Motion.

For all of these reasons, severing Ms. Tanaka from her co-defendants satisfies the constitutional rights of all defendants and addresses the practical challenges created when the government deliberately chose to conduct the January 23 Search and inject these complexities into the Kaneshiro Case.

## ARGUMENT

Federal Rule of Criminal Procedure 14 provides that if a defendant or the government would be prejudiced by joinder of the defendants in a single trial, the District Court may "sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). The court must balance the interests of judicial economy against the risk of prejudice when deciding whether to grant a motion to sever. *Zafiro v. United States*, 506 U.S. 534, 539 (1993). Severance is appropriate "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent

the jury from making a reliable judgement about guilt or innocence." *Id.* at 539.  The test

for deciding to sever is "whether joinder is so manifestly prejudicial that it outweighs the

dominant concern with judicial economy and compels the exercise of the court's

discretion . . . ." *United States v. Kenny,* 645 F.2d 1232, 1435 (9th Cir. 1981).

Here, severing Ms. Tanaka from the rest of her co-defendants is appropriate

because all defendants will be prejudiced if tried together under the current

circumstances.

1. **MS. TANAKA'S TRIAL SHOULD BE SEVERED BECAUSE CO-DEFENDANTS OPPOSE CONTINUANCE AND SHE CANNOT BE READY FOR TRIAL DUE TO THE SEIZURE OF CRITICAL TRIAL PREPARATION MATERIALS, WHICH DEPRIVES HER OF THE RIGHT TO A "FUNDAMENTALLY FAIR" TRIAL.**

   A. **A Continuance of The February 27, 2024 Trial Date For Ms. Tanaka Is Warranted.**

In Ms. Tanaka's concurrently-filed Motion for Continuance, she explains in

detail why she cannot proceed to trial on February 27 and why a continuance for her

is essential.  The facts supporting continuance are set forth in her Motion for

Continuance at pages 3-5  and are briefly summarized below.

Ms. Tanaka' would be highly prejudiced by proceeding to trial on February 27,

because her trial preparations have been upended by the turmoil resulting from the

government's seizure of electronic devices containing her data.  None of this data has

been returned to her, nor has the government responded to inquiries from Ms.

Tanaka's counsel as to when the data will be returned.  This violates Ms. Tanaka's

constitutional rights in four fundamental ways:

**First,** seizing Ms. Tanaka's work product effectively denies her (1) the right under the Confrontation Clause to cross-examine the government's witnesses, and (2) the right to present a defense under the Compulsory Process Cause.

**Second**, if the government intends to introduce the seized materials at trial, or even mention new investigation of Alleged Tanaka Conduct, Ms. Tanaka would be severely prejudiced by the fact that she has not yet received these materials from the government, making it impossible for her counsel to review the materials and move to compel discovery and/or suppress the evidence.   This eviscerates her Sixth Amendment rights to effective assistance of counsel because her lawyers cannot prepare to rebut evidence they have not seen but may get at the last minute.  It also strips her of her Fourth Amendment right to challenge the admissibility of any illegally-seized evidence.

**Third**, the government has separate and ongoing obligations to disclose information pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and *Jencks v. United States*, 353 U.S. 657 (1957).  The government has not yet done so with respect to anything seized in the January 23 Search.  But if the government does produce these materials to Ms. Tanaka's counsel, there will not be sufficient time to review those materials between now and the trial date, much less litigate (as needed) if *Brady* and *Jencks* materials were fully produced.

**Fourth**, if there is a possibility that the government may cross-examine Ms. Tanaka about the new investigation or any materials seized from her home during the January 23 Search, that may impact her decision about testifying, which implicates her

6

Fifth Amendment rights.  Ms. Tanaka cannot knowingly and intelligently decide whether to testify when that fundamental fact is unknown, and forcing her to proceed to trial on February 27 is therefore highly prejudicial.

### B.   If Co-Defendants Object To a Trial Continuance, the Proper Remedy is to Sever Ms. Tanaka's Trial.

It is expected that Ms. Tanaka's co-defendants will not support a continuance, because most of the issues identified above are specific to Ms. Tanaka.  The commonsense remedy for this is to sever Ms. Tanaka from her co-defendants and allow them to proceed to trial as scheduled on February 27, 2024.  Ms. Tanaka can proceed to trial at a later date after she has recovered full access to the seized materials and the government has better articulated how it may use information from the seized materials in its case against her.  This would restore the *status quo* that existed for her prior to the January 23 Search, which is all that she asks from the Court.

### 2.   MS. TANAKA'S CO-DEFENDANTS WOULD BE PREJUDICED IF THE GOVERNMENT PRESENTS INFORMATION ABOUT THE ALLEGED TANAKA CONDUCT

It is understood by undersigned counsel that Ms. Tanaka's co-defendants strongly want to proceed to trial on February 27 and will therefore support severing her from the joint trial.  This is a second basis for severance.

The government has refused to say whether it will seek to introduce the Alleged Tanaka Conduct as evidence in the Kaneshiro Case.  Until this possibility is unequivocally ruled out, the Court should assume that it will be admitted.  In this scenario, a joint trial is highly prejudicial to the co-defendants and will prevent the jury

from making a reliable judgement about guilt or innocence as to them. "Evidence admissible against a co-defendant that would not be admissible against the defendant if he were tried alone may create a serious risk of prejudice sufficient to require severance." *United States v. Lujan*, 529 F.Supp.2d 1315, 1325 (D. N.M. 2007) (citing *Zafiro*, 506 U.S. at 539).

In short, if the government mid-trial drops bombshell evidence of the Alleged Tanaka Conduct—which concerns allegations of threats to the safety of the former presiding judge or to a prosecutor *standing a few feet away from the jury,* it creates the strong possibility that the jury may convict the co-defendants just because of that revelation. The surefire way to avoid such prejudice is severance.

**3. BECAUSE IT IS HIGHLY LIKELY THAT THE PUBLIC WILL SOON LEARN OF THE NATURE OF THE GOVERNMENT'S INVESTIGATION INTO MS. TANAKA, NON-SEVERANCE CREATES THE RISK OF A MISTRIAL.**

Nobody wants a mistrial—not Ms. Tanaka, her co-defendants, the government, nor the Court. However, there is a high likelihood that public disclosures about the government's investigation may surface during trial and create grounds for a mistrial. There appear to exist members of the public with information about the government's investigation, due to the public execution of the search warrants. Undersigned counsel is informed that there was at least one individual observing the search at Ms. Tanaka's residence. *See* Declaration of Mark Mermelstein attached to Tanaka Motion to Continue Trial ("Mermelstein Decl.") at ¶ 9.

Historically, this case has received an extraordinary amount of press coverage, both pre- and post-indictment.  Thus far, the search warrant and the Tanaka Alleged Conduct have been kept out of the public view.  Nevertheless, when Judge Seabright issued his order recusing himself, that development received national press coverage. *See* "An Alaska judge will preside over an upcoming Hawaii bribery trial after an unexpected recusal," Washington Post, January 25, 2024, http://tinyurl.com/WaPo240125  (noting that it is "unclear what prompted Seabright's recusal" but quoting former federal defender who observed that whatever the issue, "it affects all of the local district court judges in some manner.")  Indeed, after Judge Seabright recused (within hours of the searches), undersigned counsel himself received a press inquiry.  Mermelstein Decl. at ¶ 10.   In short, the press is actively trying to determine the reason for Judge Seabright's recusal, and it is only a matter of time before the press connects the coincidence in timing between Judge Seabright's recusal, the recusal of the entire District of Hawaii bench, and the fact of the execution of the search warrants.

Moreover, the government executed multiple search warrants on January 24, which means that other individuals not subject to the Court's Protective Order received copies of warrants.  What if a copy of one of those search warrants found its way to a newspaper reporter?  A glance at the warrant would likely indicate that the government was seeking evidence related to Ms. Tanaka, as well as the crimes being investigated.  Moreover, there are percipient witnesses.  The execution of the search

warrant at Ms. Tanaka's California residence was apparent to the neighborhood, and might already been observed by local news. It was, however, reported on social media, and several individuals drew a connection between it and the Hawaii case. *See* social media screen captures, attached hereto as Exh. 1.

A strong likelihood therefore exists that the present state of secrecy will not be maintained from now through the end of the trial. What would happen, for example, if a joint trial proceeds and the press runs a story on the investigation? What would happen if the government brought charges against Ms. Tanaka based on its ongoing investigation? Either of these scenarios would create a press frenzy in Hawaii with implications for the trial. Were such disclosure to occur before the trial started, the Court could presumably address this through voir dire. However, if this happened after trial began, there is a risk that it may taint the jury, notwithstanding the Court's admonition for them to not read about this case in the press. Social media now permeates everything, and even a well-intentioned juror may wind up exposed.

These publicity-related concerns are an additional factor that weigh in favor of severing Ms. Tanaka's trial from that of her co-defendants.

## CONCLUSION

For the reasons discussed herein, Ms. Tanaka respectfully submits that the Court should sever Ms. Tanaka from her co-defendants so they may proceed to trial on February 27, 2024. The government set off a chain reaction with its January 23 Search, and has declined to address any of the resulting complications. This raises greatly prejudices Ms. Tanaka's defense and violates her constitutional rights. Her situation is more opaque than ever, and there is simply not enough time before February 27 for her counsel to analyze and respond to these issues in any meaningful way. Nor can Ms. Tanaka adequately prepare for trial after being stripped of these trial preparation materials, and without knowing whether the seized evidence, the Alleged Tanaka Conduct, or the government's new investigation of her will be admitted at trial. These facts, together with the information Ms. Tanaka submitted *in camera*, strongly warrant severance under these extraordinary circumstances.

DATED: February 5, 2024         Respectfully submitted,

                                HOLMES, ATHEY,
                                COWAN & MERMELSTEIN LLP


                                By: _/s/ Mark Mermelstein_____
                                    MARK MERMELSTEIN

                                    Attorneys for Defendant
                                    Sheri Jean Tanaka

11

# EXHIBIT 1

SCREENSHOT TAKEN FROM
NEXTDOOR.COM ON 1/30/24



EXHIBIT 1

SCREENSHOT TAKEN FROM NEXTDOOR.COM ON 1/30/24

 **Madeline Barisano** · Crest View · 6d    **• • •**

My neighbor sent me this- https://www.civilbeat.org/2023/07/businessman-accused-of-bribing-honolulu-prosecutor-points-finger-at-feds/

Like    Reply    Share     2

 **Hilary Rosen** · El Porto · 6d    **• • •**

That article is from July.

Like    Reply    Share     6

 **Madeline Barisano** · Crest View · 6d    **• • •**

**Hilary** correct, but this is the case it is tied to.

Like    Reply    Share     1

 **Kathryn Murphy** · Crest View · 6d    **• • •**

**Madeline** helpful!! Thanks for sharing! Would have been so confused without this insight!!

Like    Reply    Share     2

 **Michel VanLancker** · Bodger Park & ECV · 21m    **• • •**

**Madeline** how do you know this?

Like    Reply    Share

EXHIBIT 1

 **Tim Thomas**
Crest View • 6 days ago • 🌐                                             •••

Anyone know why there were several unmarked cars carrying FBI agents in vests apparently conducting some type of operation on the 2800 block of Vista, MB, around 3pm today?

 27                          ♡ Like     💬 71 Comments     ↗ Share

**Share post**

               
Facebook   Copy link   Email   WhatsApp   X   Repost

---

 **Lyn Fisher** • Crest View • 6d                                  •••

Interesting.  I live up the  hill in the 400 block and I drove up the street but didn't see anything out of the ordinary.  Were the FBI  personnel clearly ID'd?  Any more info?

Like     Reply     Share                                         +1  1

 **Tim Thomas**  Author • Crest View • 6d              •••

**Lyn** I saw four agents, but there may have been more.  All were wearing khakis and wearing FBI vests.  Unmarked vehicles had blue lights flashing in the rear.  Vista was completely blocked at the corner of 28th Place.

Like     Reply     Share                                         7

EXHIBIT 1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document will

be served on the following counsel at their last known addresses on the date

indicated below.

MICHAEL G. WHEAT, ESQ.                    ***Attorneys for the United States of***
JOSEPH J.M. ORABONA, ESQ.                 ***America***
JANAKI G. CHOPRA, ESQ.
COLIN M. MCDONALD, ESQ.
ANDREW Y. CHIANG, ESQ.
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101
E-mail: michael.wheat@usdoj.gov
        joseph.orabona@usdoj.gov
        Janaki.Chopra@usdoj.gov
        Colin.McDonald@usdoj.gov
        Andrew.Chiang@usdoj.gov


CRYSTAL G. K. GLENDON                     ***Attorney for Defendant Sheri Jean***
Glendon & Ponce, LLLC                     ***Tanaka***
1001 Bishop St., Suite 710
Honolulu, Hawaii 96813
E-mail: crystal@glendonponce.com


BIRNEY B. BERVAR, ESQ.                    ***Attorney for Defendant Keith***
Bervar & Jones                            ***Mitsuyoshi Kaneshiro***
1100 Alakea Street, 20th Floor
Honolulu, Hawaii 96813
E-mail: bbb@bervar-jones.com


NINA MARINO                               ***Attorneys for Defendant Dennis***
JENNIFER LIESER                           ***Kuniyuki Mitsunaga***
Kaplan Marino, PC
1546 N. Fairfax Avenue
Los Angeles, CA 90046
E-mail: marino@kaplanmarino.com
        lieser@kaplanmarino.com

JOHN M. SCHUM, ESQ.                    ***Attorneys for Defendant Dennis***
Law Office of John Schum               ***Kuniyuki Mitsunaga***
P.O. Box 1241
Honolulu, Hawaii 96807
E-mail: John@JohnSchum.com


DORIS LUM, ESQ.                        ***Attorney for Defendant Terri Ann***
Law Office of Doris Lum, LLLC          ***Otani***
1001 Bishop Street, Suite 710
Honolulu, Hawaii 96813
E-mail: doris@dorislumlaw.com


ANDREW M. KENNEDY, ESQ.                ***Attorney for Defendant Aaron***
Schlueter Kwiat & Kennedy LLLP         ***Shunichi Fujii***
Atrium Court
75-167 Kalani St, Ste. 201
Kailua Kona, HI 96740
E-mail: Andrew@kona-lawyer.com


THOMAS M. OTAKE, ESQ.                  ***Attorney for Defendant Chad***
Thomas M. Otake AAL, ALC              ***Michael McDonald***
851 Fort Street Mall, Suite 400
Honolulu, Hawaii 96813
E-mail: thomas@otakelaw.com



DATED:  February 5, 2024          Respectfully submitted,

                                  HOLMES, ATHEY,
                                  COWAN & MERMELSTEIN LLP


                                  By: ___*/s/ Mark Mermelstein*_____
                                      MARK MERMELSTEIN

                                      Attorneys for Defendant
                                      Sheri Jean Tanaka