Mark Mermelstein (CA SBN 208005)
mmermelstein@holmesathey.com
Andrew S. Cowan (CA SBN 165435)
acowan@holmesathey.com
Holmes, Athey, Cowan
& Mermelstein LLP
811 Wilshire Boulevard, Suite 1460
Los Angeles, CA 90017
Telephone: (213) 985-2200

*Attorneys for Defendant Sheri Jean Tanaka*

Doris Lum (HI SBN 008365)
doris@dorislumlaw.com
Law Office of Doris Lum, LLLC
1001 Bishop Street, Suite 710
Honolulu, HI 96813

*Attorney for Defendant*
*Terri Ann Otani*

Birney B. Bervar (HI SBN 005482)
bbb@bervar-jones.com
Bervar & Jones
1100 Alakea Street, 20th Floor
Honolulu, HI 96813
*Attorney for Defendant*
*Keith Mitsuyoshi Kaneshiro*

Andrew M. Kennedy (HI SBN 009734)
Andrew@kona-lawyer.com
Schlueter Kwiat & Kennedy LLLP
Atrium Court
75-167 Kalani St, Ste. 201
Kailua Kona, HI 96740

*Attorney for Defendant*
*Aaron Shunichi Fujii*

Nina Marino (CA SBN 142815)
marino@kaplanmarino.com
Kaplan Marino, PC
1546 N. Fairfax Avenue
Los Angeles, CA 90046

*Attorney for Defendant*
*Dennis Kuniyuki Mitsunaga*

Thomas M. Otake (HI SBN 007622)
thomas@otakelaw.com
Thomas M. Otake AAL, ALC
851 Fort Street Mall, Suite 400
Honolulu, HI 96813

*Attorney for Defendant*
*Chad Michael McDonald*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KEITH MITSUYOSHI KANESHIRO (1),<br>DENNIS KUNIYUKI MITSUNAGA (2),<br>TERRI ANN OTANI (3),<br>AARON SHUNICHI FUJII (4),<br>CHAD MICHAEL MCDONALD (5),<br>SHERI JEAN TANAKA (6),<br><br>Defendants. | Case No. CR-22-00048-TMB-NC<br><br>**DEFENDANTS' TRIAL BRIEF;<br>EXHIBIT 1; CERTIFICATE OF<br>SERVICE**<br><br>Judge: Hon. Timothy M. Burgess<br>Trial Date: March 12, 2024 |

Defendants Keith Mitsuyoshi Kaneshiro, Dennis Kuniyuki Mitsunaga, Terri Ann Otani, Aaron Shunichi Fujii, Chad Michael McDonald and Sheri Jean Tanaka ("Defendants") hereby file their Trial Brief in the above-captioned matter.  The principal purpose of this Trial Brief is to summarize the law of the case as established by the various rulings of the prior presiding District Judge, the Honorable J. Michael Seabright.  It also summarizes the law concerning the standards for proving *quid pro quo* bribery in the context of campaign contributions.

As the Court is aware, this case involved a great deal of pre-trial litigation concerning, among other issues, whether a bill of particulars was warranted, the applicable statute of limitations as to both counts of the First Superseding Indictment ("FSI"); whether the government properly alleged the elements of both counts; and whether Count Two was subject to a void for vagueness challenge.  In resolving these issues, Judge Seabright made a series of rulings with significant implications for the jury instructions, the special verdict form, and a future defense Motion for Judgment of Acquittal under Fed. R. Crim. P. 29.  Moreover, in the course of responding to the issues raised by the defense, and to questions posed by Judge Seabright, the government committed itself to certain positions that Judge Seabright relied on in reaching his rulings.  The government should be estopped from altering those positions now.

## I.      FACTUAL BACKGROUND

At all relevant times to the indictment, Keith Kaneshiro was the three-time elected Prosecutor for the City and County of Honolulu. Dennis Mitsunaga was the CEO of Mitsunaga and Associates, Inc. ("MAI"), a Honolulu-based 50-year-old engineering and architectural firm with no history of regulatory or other violations. Aaron Fujii was the President and COO leading the Architecture Department. Chad McDonald was the Vice President. Terri Otani was the Secretary. Sheri Tanaka was a young lawyer who had first been retained by MAI in October 2011.

L.J.M. worked for MAI for 15 years in its architecture department. She was terminated on November 10, 2011 after the company discovered she had engaged in misconduct which included her work on unauthorized outside projects. One of those unauthorized projects resulted in MAI being sued for construction defects. L.J.M. filed for unemployment which MAI unsuccessfully challenged. MAI filed a police report with the Honolulu Police Department alleging L.J.M. had stolen from MAI. MAI subsequently provided information regarding L.J.M.'s apparent criminal conduct to the Department of the Prosecuting Attorney (DPA) which were later dismissed. L.J.M. filed an unsuccessful federal civil rights lawsuit against MAI claiming she was discriminated against based on her gender and age when she was terminated, while MAI prevailed on its counterclaim for breach of the duty of loyalty.

The government alleges that the defendants sought to retaliate against L.J.M. by conspiring to have her criminally prosecuted and sought to interfere with her civil rights. The government specifically alleges that the MAI-affiliated defendants made campaign contributions to Kaneshiro, in exchange for his promise to prosecute L.J.M.

Unlike other cases in which bribery allegedly occurred through campaign contributions, the government's case here rests entirely on circumstantial evidence. There are no witnesses that will testify to the existence of the alleged *quid pro quo,* whereby Kaneshiro allegedly agreed to take an official act and prosecute L.J.M. in exchange for campaign contributions.  Nor is this alleged agreement set forth in any recording, voicemail, text or email.  Given this lack of evidence, it is hardly surprising that the government has never alleged the specific date upon which the supposed illicit agreement was reached.

Campaign contributions are not only a constitutionally-protected form of free speech, but due to reporting requirements are an extremely public and transparent way to spend money. By contrast a bribe is clandestine by nature.  Furthermore, MAI and its employees have a long history of making campaign contributions.  Campaign contributions are lawful for the purpose of supporting a public official's campaign, and equally lawful if made for the purpose of gaining access to that public official.

## II.   LAW OF THE CASE ESTABLISHED BY JUDGE SEABRIGHT

As detailed below, Judge Seabright made multiple pre-trial rulings with significant implications for the legal issues in this case.

### A. Law of the Case Doctrine

"'Under the law of the case doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case.'" *Hydrick v. Hunter*, 500 F.3d 978, 986 (9th Cir. 2007) (citation omitted); *United States v. Bad Marriage*, 439 F.3d 534, 538 (9th Cir. 2006). "For the law of the case doctrine to apply, the issue in question must have been decided explicitly or by necessary implication in the previous disposition." *Hydrick* at 986 (citations and internal quotes and brackets omitted); *United States v. Thrasher*, 483 F.3d 977, 981 (9th Cir. 2007). Exceptions to the law of the case doctrine apply in circumstances where: "(1) the first decision was clearly erroneous; (2) an intervening change in the law occurred; (3) the evidence on remand was substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result." *See, e.g., Ingle v. Circuit City*, 408 F.3d 592, 594 (9th Cir. 2005).

"[E]very order short of a final decree is subject to reopening at the discretion of the district judge." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 12 (1983). Nevertheless, such discretion properly may be exercised only within the confines of the doctrine of the law of the case, which, "as most commonly defined, . . . posits that when a court decides upon a rule of law, that

decision should continue to govern the same issues in subsequent stages in the same case."  *Christianson v. Colt Industries Operating Corp*, 486 U.S. 800, 815-16 (1988) (*quoting Arizona v. California*, 460 U.S. 605, 618 (1983)).  Although it "comes into play only with respect to issues previously determined" (*Quern v. Jordan*, 440 U.S. 332, 347 n.18 (1979)), the law of the case doctrine "encompasses a court's explicit decisions as well as those issues decided by necessary implications." (*Eichman v. Fotomat Corp*., 871 F.2d 784, 791 (9th Cir. 1989) (internal citation omitted).

### B.  Key Pretrial Rulings of Judge Seabright

In the course of ruling on various pretrial motions brought by defendants, Judge Seabright made the following determinations:

#### 1.  The Government Must Prove a *Quid Pro Quo* for Each of the Three Objects of the Conspiracy Charged in Count One.

Judge Seabright ruled that the government must prove a *quid pro quo* for each of the three conspiratorial objects charged in Count One, and that under Ninth Circuit authority must also prove that the *quid pro quo* is "clear and unambiguous."

Count One charges a conspiracy to commit bribery under 18 U.S.C. § 371 with three objects: (1) honest services wire fraud in violation of 18 U.S.C. §§ 1343, 1346; (2) bribery of an agent of a program receiving federal funds in violation of 18 U.S.C. § 666(a)(2); and (3) solicitation of a bribe by an agent of a program receiving federal funds, in violation of 18 U.S.C. § 666(a)(1)(b).  FSI at ¶¶ 7-8.  This conspiracy allegedly occurred through a *quid pro quo* agreement in which campaign

contributions were given to co-defendant Kaneshiro, in exchange for which he would take official action and exercise his authority as the Honolulu Prosecuting Attorney "to open an investigation into and prosecute former MAI employee L.J.M."  FSI at ¶ 21(3).

Judge Seabright ruled that the government must prove this *quid pro quo* for each of the three objects, even though a *quid pro quo* is often not an element of a § 666 violation.  He based this ruling on the fact that the government chose to charge the § 371 conspiracy as a *quid pro quo* conspiracy.

Judge Seabright's ruling saved the two § 666 object crimes from dismissal based on the statute of limitations.  The FSI alleges that the final campaign contribution was made on October 19, 2016, five years and eight months before the indictment in this case issued.  *See* FSI, Overt Act 47.  In an ordinary § 666 case, the limitations period would run from that date, because the crime is complete on the day that the last corrupt payment is made.  *See, e.g., United States v. Garrido*, 713 F.3d 985, 996–97 (9th Cir. 2013); *United States v. Jones*, 676 F.Supp.2d 500, 518 (W.D. Tex. 2009); *United States v. Yashar,* 166 F.3d 879-80 (7th Cir. 1999).

Judge Seabright, however, found that the government had alleged overt acts within the limitations period, even though they were not payments.  They were instead acts allegedly taken to sustain the prosecution of L.J.M., which the government characterized as the *quo* given by Kaneshiro in exchange for the campaign contributions.  Judge Seabright's ruling hinged on his finding that the

6

government had alleged a single *quid pro quo* conspiracy that encompassed the two § 666 objects. *See* 2/28/23 Hearing Transcript at 64-66, attached as Exh. 1.[1]  Judge Seabright emphasized that "although a 666 prosecution does not require a *quid pro quo*, many in fact do involve a *quid pro quo*." *Id.* at 65.  For this reason, the conspiracy to commit federal program bribery continued past "the day when the final corrupt payment is given under the facts of this case and given the specific allegations in the first superseding indictment." *Id.* at 66-67.

Per Judge Seabright, if the government failed to prove the "larger conspiracy" (*i.e.* the *quid pro quo* conspiracy) as to each object, Count One would fail under the statute of limitations and Rule 29:

> THE COURT: Then [the defense would] win on the statute of limitations defense, right? If that's all they can prove. I think you win on the statute of limitations. And maybe even under Rule 29 at that point, right? Because if they don't prove that larger conspiracy that has been alleged, then they are going to fall outside the statute of limitations. If they can't prove that ultimately.

Exh. 1 at 9-10, 11.  Judge Seabright reiterated that if the government could not present adequate evidence of a *quid pro quo* then a Rule 29 judgment of acquittal would be appropriate.  *Id.*

---

[1] Judge Seabright did not issue a separate written order ruling on Ms. Tanaka's Motion to Dismiss Based on the Statute of Limitations.

**2. The Government Must Also Prove a *Quid Pro Quo* for Both Objects Charged in Count Two.**

As discussed above, based on how the government charged the conspiracy in Count One, Judge Seabright ruled it was required to prove a *quid pro quo* for each of its three conspiratorial object crimes. The same reasoning applies to Count Two, which is based on the exact same conspiratorial agreement.

Count Two alleges that the defendants conspired against the following rights of L.J.M.:

> the right under the Fourth and Fourteenth Amendment to be free from unreasonable seizures by one acting under color of law, and the right to file a lawsuit in federal court alleging claims under Title VII of the Civil Rights Act and the Age Discrimination in Employment Act.

FSI at ¶ 24. Judge Seabright found that Count Two charged the same conspiratorial conduct alleged in Count One: that defendant Kaneshiro allegedly prosecuted L.J.M. in return for campaign contributions (in other words, the same *quid pro quo*):

> Rather, to prove a § 241 violation, the United States must show that two or more of the Defendants agreed to deprive LJM of the right to be free from an unlawful seizure and that those Defendants knowingly joined the agreement and intended to deprive LJM of her right to be free from an unlawful seizure. *See United States v. Gonzalez,* 906 F.3d 784, 792 (9th Cir. 2018) (setting forth elements of a § 241 offense). And it is reasonable to infer that the prosecution of an individual **(in return for campaign contributions)** could have been intended to result in an unlawful incarceration, a clear Fourth Amendment seizure. In short, under the facts alleged in the FSI, whether Defendants intended to deprive LJM of her right to be free from unlawful seizure is a question for the jury, not this court.

5/2/23 Seabright Order (ECF 195) at PageID.997. Again, Judge Seabright found that the FSI alleged one conspiracy—a *quid pro quo* conspiracy—that this conspiracy

applied to all counts and all conspiratorial objects, and that the government was therefore required to prove the charge *quid pro quo* as to each.  Underscoring this determination, Judge Seabright further found that, as to conspiratorial objects in Count Two, "the FSI clearly alleges that the Defendants acted with a corrupt motive—the exchange of campaign contributions in return for the investigation and prosecution of LJM."  *Id.* at PageID.998-9.

Judge Seabright reached this conclusion after the government repeatedly argued that the alleged bribery lies at the heart of Count Two.  In defendant Tanaka's Motion to Dismiss Count Two she had argued that § 241 was unconstitutionally vague because it did not provide adequate notice that defendants' actions in referring a matter to the prosecutor's office could be considered conduct that would "injure, oppress, threaten and intimidate" L.J.M. in the exercise of her rights.  (ECF 165 at PageID.730).  In response the government argued: "§ 241 is not vague with respect to the terms "injure, oppress, threaten, or intimidate" under the facts of this case. Purchasing a criminal prosecution, and buying the allegiance of the city's top prosecutor, clears the bar set by those terms."  *See* ECF 171 at PageID.858.  The government further argued that the defendants conspired against L.J.M.'s Fourth Amendment rights through this alleged *quid pro quo*:  "In the meantime, with the *quid* flowing to his campaign coffers, Kaneshiro supplied the *quo*: 'In exchange for the campaign contributions given to him by [his co-conspirators], Kaneshiro would agree to take official action and exercise his authority as the Prosecuting Attorney . . .

to open an investigation into and prosecute former MAI employee L.J.M.'" *Id.* at PageID.863. The government further argued that "the conspirators tried to buy a prosecution that was based on corruption, not probable cause, a quintessential effort to effect an unreasonable seizure." Id. at PageID.865. The government thus asserted, and Judge Seabright relied on, that the gravamen of this particular § 241 conspiracy against rights was a quid pro quo whereby campaign contributions were made in exchange for a prosecution.

As to Count Two, Judge Seabright also found that Ninth Circuit law required proof of an overt act within the statute of limitations. *See* 2/28/23 Hearing Transcript, Exh. 1 at 48-51. After finding that L.J.M. had not been physically restrained or seized within the limitations period, he asked the government to identify the overt acts in furtherance of a conspiracy against Fourth Amendment rights that occurred within the limitations period. In response, the government relied on the fact that it had charged a *quid pro quo* conspiracy, and (as with Count One) again emphasized the *quo* that was allegedly delivered within the limitations period in return for the campaign contributions:

> [W]e think that the overt acts would be the acts committed in furtherance of the prosecution of LJM. . .. It would be the fact that Mr. Kaneshiro sent a prosecutor to oppose the Motion to Dismiss. It would be filing—filing the opposition of the Motion to Dismiss. It would be going to court and arguing it. It would be Mr. Kaneshiro expressing a desire to have the dismissal appealed.

Exh. 1 at 49-51.  Judge Seabright then confirmed that this was the government's

position, asking whether its view was that, within the five years preceding the

indictment, "there's still a conspiracy to violate the Fourth Amendment by

prosecuting her and what could come out of that prosecution, which could be a

further seizure."  *Id.* at 50.  The government responded:

> That's correct. That's the way that we view it. And we're also looking
> at this conspiracy and asking, you know, what—what is the payoff to
> the defendants. What is the—what do they want out of it. And, you
> know, I think the Ninth Circuit has consistently said that even if the
> object or the—the object of the conspiracy is completed, the
> conspiracy continues until the defendants get what they want. And if
> here we're limiting the object of the conspiracy or the objective of the
> conspiracy to a Fourth Amendment arrest, there is still—what still
> continues is their desire springing from that arrest for the victim in
> this case to suffer the consequences of that arrest through a
> prosecution.

*Id.* at 50-51.

### 3.  The *Quid Pro Quo* Must Be "Clear and Unambiguous" and Must Precede and Control the Official Act.

Defendants sought to dismiss Count One on the ground that it failed to allege

an explicit *quid pro quo* whereby a public official agreed to take specific *future*

official action in exchange for the contributions.  *See McCormick v. United States*,

500 U.S. 257, 273 (1991); Defendant Tanaka's Motion to Dismiss Count One (ECF

205-1).  Judge Seabright denied the motion, but in doing so made specific rulings

clarifying what showing the government must make to prove a *quid pro quo* in this

case, based on the heightened standard that applies when bribery allegedly occurs through campaign contributions.

First, Judge Seabright affirmed the Ninth Circuit's standard in *United States v. Carpenter,* which held that an "explicit" *quid pro quo* means that the "*quid pro quo* be clear and unambiguous, leaving no uncertainty about the terms of the bargain." *See* 6/28/23 Seabright Order (ECF 218) at PageID.1212.

Second, Judge Seabright recognized that the *quid pro quo* agreement must precede and control the performance of the official act." *Id.* at PageID.1216-18.  He found that the correct "sequential relationship between the *quid* and the *quo*" must be alleged and proven.  *Id.* at 1218.  He found that an explicit *quid pro quo* means that "the official's conduct will necessarily be controlled by that explicit agreement." *Id.* at PageID.1217.  He cited numerous cases that held that there is no *quid pro quo* in situations where an agreement to accept a thing of value occurs *after* an official act has been performed.  *Id.* at PageID.1217-18; *see United States v. Fernandez,* 722 F.3d 1, 19 (1st Cir. 2013); *United States v. Correia,* 55 F.4th 12, 31 (1st Cir. 2022); *United States v. Griffin,* 154 F.3d 762, 764 (8th Cir. 1998), *as amended* (Sept. 8, 1998);  *United States v. Baker,* 2021 WL 1556180, at *2 (E.D. Ark. Apr. 20, 2021).

**4. The *Quid Pro Quo* Consisted of Defendant Kaneshiro's Alleged Agreement to Prosecute L.J.M. in Exchange for Campaign Contributions.**

Judge Seabright's rulings also clarified that the *quid pro quo* the government must prove in Counts One and Two consisted of a particular alleged agreement by defendant Kaneshiro—**an agreement to prosecute** L.J.M, in exchange for campaign contributions.

This clarification was needed because the charging language in the FSI was broader and imprecise.  It alleged a *quid pro quo* agreement whereby campaign contributions (the *quid*) were given to co-defendant Kaneshiro, in exchange for the *quo*: his promise to take official action and exercise his authority as the Honolulu Prosecuting Attorney in two ways: (1) to "open an investigation into" and (2) to "prosecute" L.J.M.  FSI at ¶ 21(3).  The government subsequently clarified, and Judge Seabright found, that the alleged *quo* consisted **only** of the alleged agreement to prosecute, because the concept of prosecution subsumes the related component of investigation.  Therefore, it will be insufficient at trial for the government to prove merely that defendant Kaneshiro agreed "to open an investigation into" L.J.M.  The government must instead prove that he agreed to prosecute her.

During oral argument, the government clarified that there was only a single object of the alleged honest services wire fraud:

> The main object that we tried to make clear in the indictment was it was to prosecute LJM in this case. Okay. That--that was the—that was the end goal. It was to have her prosecuted in exchange for bribes

> bereft of probable cause. We do use the word "investigate" in there, but we really mean that as part of the same objective, part of the same thing. . . .
>
> And so what we tried to portray in our indictment is really just one object, really it's to prosecute the victim in this case and there is an investigative component to it that is ongoing at the same time.

Exh. 1 at 18.  When Judge Seabright specifically asked if the "investigation part" was subsumed in the prosecution part, the government replied, "We would agree with that."  *Id.* at 19-20.  Judge Seabright adopted the government's view, and in doing so recognized that an allegation of campaign contributions made in exchange for "opening an investigation" as a stand-alone object would be time-barred.  *Id.* at 67.

### 5.  For Count Two, the Government Must Prove at Least One Overt Act Within the Statute of Limitations.

As to Count Two, Judge Seabright explicitly found that Ninth Circuit law required proof of an overt act within the statute of limitations.  2/28/23 Hearing Transcript, Exh. 1 at 48-51.  In making this ruling, Judge Seabright relied on *United States v. Inryco,* 642 F.2d 290 (9th Cir. 1981) and *United States v. Brown,* 936 F.2d 1042 (9th Cir. 1991).

### 6.  Judge Seabright Reserved Ruling on Whether 18 U.S.C. § 241 is Unconstitutionally Vague as Applied, Until After the Prosecution Rests.

Defendants had argued that the § 241 conspiracy against rights charged in Count Two was unconstitutionally vague as applied in this case, to the extent that it alleged a conspiracy to "injure, oppress, threaten and intimidate" L.J.M. in the exercise of her right to "file a lawsuit in federal court."  *See* Defendant Tanaka's

Motion to Dismiss Count Two (ECF 165-1) at PageID.725-730.  Specifically, defendants had argued that, after a person files a lawsuit in federal court, a vast range of conduct occurs in the course of litigation that is specifically done in order to "injure, oppress, threaten and intimidate" an adversary—and § 241 provides no guidance as to what is permissible and what is not.  Defendants argued that nothing in the plain language of § 241 or its 150-year history of enforcement would put defendants on fair notice that such conduct could be a federal felony with a possible ten-year sentence.  *See* ECF 165-1 at PageID.728-730.

Judge Seabright decided it was premature to rule on whether § 241 was unconstitutionally vague as applied, and stated he would not consider the issue until after the government had presented its evidence.  He invited the defense to present the issue at that time pursuant to Fed. R. Crim. P. 29(a).  *See* 5/2/23 Seabright Order (ECF 195) at PageID.996.

## III.   LAW GOVERNING QUID PRO QUO BRIBERY INVOLVING CAMPAIGN CONTRIBUTIONS

*McCormick v. United States*, 500 U.S. 257 (1991) provides the legal standard for *quid pro quo* bribery prosecutions that involve campaign contributions.  In that case, the Supreme Court vacated the conviction of a state legislator who was convicted of taking campaign contributions from a lobbyist in exchange for sponsoring legislation that benefitted the lobbyist.  It held that receipt of a campaign contribution violated the statute only if the government could prove an **explicit** *quid pro quo* — that is, "only if

the payments are made in return for an explicit promise or undertaking by the official to perform or not to perform an official act.  In such situations the official asserts that his official conduct **will be controlled** by the terms of the promise or undertaking." *McCormick*, 500 U.S. at 273 (emphasis added).  "The second sentence is key to understanding the limits of the *McCormick* rule: the explicit agreement must precede and control the official conduct."  *See United States v. Benjamin,* 2022 WL 17417038, at *16 (S.D.N.Y. 2022); *accord United States v. Inzunza*, 638 F.3d 1006, 1014 (9th Cir. 2011) ("We note that this requirement of explicitness refers to the **promise** of official action, not the connection between the contribution and the promise.") (emphasis added); *see also United States v. Carpenter,* 961 F.2d 824, 827 (9th Cir. 1992) (*McCormick's* "explicitness requirement" is satisfied only if the terms of the *quid pro quo* are "clear and unambiguous, leaving no uncertainty about the terms of the bargain").

McCormick and its progeny therefore require that in bribery cases involving campaign contributions, it is an implied element of the offense that the illicit promise (1) precede the official conduct, and (2) be utterly "clear and unambiguous" as to what future official conduct will be taken in exchange for the campaign contribution. The purpose of this demanding standard is to ensure that the jury, when presented with evidence of a *sequential* relationship between a contribution and an official action, does not erroneously assume a *causal* relationship between the two.  Even so, this strict standard is imperfect because it "may still leave grey areas where the

connection between contribution and promise is sufficiently attenuated" that a jury
should not be permitted "to speculate on the requisite connection between
contribution and promise." *United States v. Inzunza,* 638 F.3d at 1014.

 *McCormick*, in requiring an explicit *quid pro quo* element in campaign
contribution bribery cases, specifically requires that the jury must find the existence
of an explicit promise that **precedes and controls** the official action.  This is because
bribery through campaign contributions does not occur merely when a campaign
contribution (*quid*) is followed by an official act, or if a donor agrees to make a
contribution after the performance of the official act.  This element must be strictly
enforced to ensure that the jury does not improperly infer the existence of an illicit
agreement simply because an official act came after a campaign contribution.

 The Supreme Court has repeatedly held that campaign contributions are
political speech implicating fundamental constitutional guarantees, and has
admonished that "the First Amendment requires [the Court] to err on the side of
protecting political speech rather than suppressing it."  *McCutcheon v. Fed. Election
Comm'n*, 572 U.S. 185, 209 (2014) (quoting *Federal Election Comm'n v. Wisconsin
Right to Life*, 551 U.S. 449, 457 (2007)).  Because core First Amendment principles
are implicated in this prosecution, the Court must strictly construe the *McCormick*
standard in order to avoid the danger of chilling protected political speech.  *See
McCutcheon*, 572 U.S. at 204 (campaign contributions are an exercise of one's
"expressive and associational" rights under the First Amendment); *Buckley v. Valeo*,

424 U.S. 1, 24–25 (1976) (noting that campaign contributions implicate "the

contributor's freedom of political association" under the First Amendment); *FEC v.*

*Ted Cruz for Senate*, 142 S. Ct. 1638, 1650 (2022) ("[t]he First Amendment 'has its

fullest and most urgent application precisely to the conduct of campaigns for political

office.'" (quoting *Monitor Patriot Co. v. Roy*, 401 U. S. 265, 272 (1971)).

Because campaign contributions implicate the very foundations of the

American democratic system, the *McCormick* Court was careful to delineate the

boundary between legal and illegal conduct when public officials raise money from

the same people who elect them:

> [T]o hold that legislators commit the federal crime of extortion when
> they act for the benefit of constituents or support legislation furthering
> the interests of some of their constituents, shortly before or after
> campaign contributions are solicited and received from those
> beneficiaries, is an unrealistic assessment of what Congress could
> have meant by making it a crime to obtain property from another, with
> his consent, 'under color of official right.'

500 U.S. at 272.  Instead, sanctionable conduct must cross a clear line of impropriety,

because "[t]o hold otherwise would open to prosecution not only conduct that has

long been thought to be well within the law but also conduct that in a very real

sense is unavoidable so long as election campaigns are financed by private

contributions . . . ." *Id.*  In keeping with *McCormick,* the Supreme Court recently

reiterated that an official act taken in the hope that it will yield campaign donations is

**not** a bribe, but rather a basic aspect of the American political system:

> [I]nfluence and access "embody a central feature of democracy— that
> constituents support candidates who share their beliefs and interests,
> and candidates who are elected can be expected to be responsive to
> those concerns." . . . To be sure, the "line between *quid pro quo*
> corruption and general influence may seem vague at times, but the
> distinction must be respected in order to safeguard basic First
> Amendment rights."

*Ted Cruz for Senate*, 142 S. Ct. at 1653 (quoting *McCutcheon*, 572 U.S. at 192, 209).

The converse is equally true: that a campaign contribution made in hope or

expectation of a favorable official act is not tantamount to bribery. *See, e.g., United*

*States v. Inzunza*, 638 F.3d 1006, 1013 (9th Cir. 2011) ("[I]n our flawed but nearly

universal system of private campaign financing, large contributions are commonly

given in expectation of favorable official action."); *United States v. Tomblin*, 46 F.3d

1369, 1379 (5th Cir. 1995) ("Intending to make a campaign contribution does not

constitute bribery, even though many contributors hope that the official will act

favorably because of their contributions.").

In *McCormick*, the Supreme Court explained its concern with criminalizing

common political conduct. Serving constituents is the "everyday business" of

elected officials, and it was not the intent of Congress to make it a crime to "act for

the benefit of constituents . . . shortly before or after campaign contributions are

solicited and received from those beneficiaries." *McCormick* at 272-73. For this

reason, the Supreme Court concluded that "The receipt of [political] contributions is

. . . vulnerable under the [Hobbs] Act as having been taken under color of official

right, but only if the payments are made in return for an explicit promise or

undertaking by the official to perform or not to perform an official act. *Id.* at 273. The Supreme Court in *McCormick* therefore held that an explicit *quid pro quo*, in which the corrupt promise to perform an official act *precedes and controls* the official act itself, is the dividing line between permissible and impermissible campaign contributions.

In order to protect the core First Amendment interest of political speech, often expressed through campaign contributions, the *McCormick* standard should be strictly construed with respect to evidentiary rulings and the formulation of jury instructions in this case.

Respectfully submitted,

DATED:  February 20, 2024

HOLMES, ATHEY,
COWAN & MERMELSTEIN LLP

By:   */s/ Mark Mermelstein*
MARK MERMELSTEIN
*Attorneys for Defendant*
*Sheri Jean Tanaka*

BERVAR & JONES

By:   */s/ Birney B. Bervar*
BIRNEY B. BERVAR
*Attorney for Defendant*
*Keith Mitsuyoshi Kaneshiro*

KAPLAN MARINO, PC

By:   */s/ Nina Marino*
NINA MARINO
*Attorney for Defendant*
*Dennis Kuniyuki Mitsunaga*

LAW OFFICE OF DORIS LUM, LLLC

By:   */s/ Doris Lum*
DORIS LUM
*Attorney for Defendant*
*Terri Ann Otani*

SCHLUETER KWIAT & KENNEDY LLLP

By:   */s/ Andrew M. Kennedy*
ANDREW M. KENNEDY
*Attorney for Defendant*
*Aaron Shunichi Fujii*

THOMAS M. OTAKE AAL, ALC

By:   */s/ Thomas M. Otake*
THOMAS M. OTAKE
*Attorney for Defendant*
*Chad Michael McDonald*

20

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on the following counsel at their last known addresses by the CM/ECF system on the date indicated below:

MICHAEL G. WHEAT, ESQ.  
JOSEPH J.M. ORABONA, ESQ.  
JANAKI G. CHOPRA, ESQ.  
COLIN M. MCDONALD, ESQ.  
ANDREW Y. CHIANG, ESQ.  
United States Attorney's Office  
880 Front Street, Room 6293 San Diego, California 92101  
E-mail: michael.wheat@usdoj.gov  
joseph.orabona@usdoj.gov  
Janaki.Chopra@usdoj.gov  
Colin.McDonald@usdoj.gov  
Andrew.Chiang@usdoj.gov  

***Attorneys for the United States of America***

CRYSTAL G. K. GLENDON  
Glendon & Ponce, LLLC  
1001 Bishop St., Suite 710  
Honolulu, Hawaii 96813  
E-mail: crystal@glendonponce.com  

***Attorney for Defendant Sheri Jean Tanaka***

BIRNEY B. BERVAR, ESQ.  
Bervar & Jones  
1100 Alakea Street, 20th Floor  
Honolulu, Hawaii 96813  
E-mail: bbb@bervar-jones.com  

***Attorney for Defendant Keith Mitsuyoshi Kaneshiro***

NINA MARINO  
JENNIFER LIESER  
Kaplan Marino, PC  
1546 N. Fairfax Avenue  
Los Angeles, CA 90046  
E-mail: marino@kaplanmarino.com  
lieser@kaplanmarino.com  

***Attorneys for Defendant Dennis Kuniyuki Mitsunaga***

21

JOHN M. SCHUM, ESQ.                    ***Attorneys for Defendant Dennis***
Law Office of John Schum              ***Kuniyuki Mitsunaga***
P.O. Box 1241
Honolulu, Hawaii 96807
E-mail: John@JohnSchum.com


DORIS LUM, ESQ.                       ***Attorney for Defendant Terri Ann***
Law Office of Doris Lum, LLLC         ***Otani***
1001 Bishop Street, Suite 710
Honolulu, Hawaii 96813
E-mail: doris@dorislumlaw.com


ANDREW M. KENNEDY, ESQ.               ***Attorney for Defendant Aaron***
Schlueter Kwiat & Kennedy LLLP        ***Shunichi Fujii***
Atrium Court
75-167 Kalani St, Ste. 201
Kailua Kona, HI 96740
E-mail: Andrew@kona-lawyer.com


THOMAS M. OTAKE, ESQ.                 ***Attorney for Defendant Chad Michael***
Thomas M. Otake AAL, ALC              ***McDonald***
851 Fort Street Mall, Suite 400
Honolulu, Hawaii 96813
E-mail: thomas@otakelaw.com



DATED: February 20, 2024         Respectfully submitted,

                                 HOLMES, ATHEY,
                                 COWAN & MERMELSTEIN LLP


                                 By:   */s/ Mark Mermelstein*
                                       MARK MERMELSTEIN

                                 Attorneys for Defendant
                                 Sheri Jean Tanaka